# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LORENZO LAMONT BROWN,

Defendant-Appellant.

<div style="float:right">

UNPUBLISHED
November 29, 2016

No. 327734
Wayne Circuit Court
LC No. 14-011033-01-FC

</div>

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TERI BERNARD JOHNSON,

Defendant-Appellant.

<div style="float:right">

No. 327736
Wayne Circuit Court
LC No. 15-00469-01-FC

</div>

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

WADDELL POOLE BURNEY,

Defendant-Appellant.

<div style="float:right">

No. 327814
Wayne Circuit Court
LC No. 14-011033-02-FC

</div>

Before: WILDER, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

Defendants Lorenzo Brown, Teri Johnson, and Waddell Burney were tried jointly, before a single jury. The jury convicted defendant Brown of assault with intent to commit murder, MCL 750.83; carrying a weapon with unlawful intent, MCL 750.226; felon in possession of a

-1-

firearm, MCL 750.224f; and possession of a firearm during commission of a felony, second offense ("felony-firearm"), MCL 750.227b. The jury convicted defendant Johnson of one count each of assault with intent to do great bodily harm less than murder, MCL 750.84; carrying a weapon with unlawful intent; felon in possession of a firearm; and felony-firearm, second offense. It convicted Burney of assault with intent to do great bodily harm less than murder; carrying a weapon with unlawful intent; and felony-firearm, first offense. The trial court sentenced Brown as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 500 to 749 months for the assault with intent to commit murder conviction, and 5 to 10 years each for the carrying a weapon with unlawful intent and felon-in-possession convictions, to be served consecutive to a five-year term of imprisonment for the felony-firearm conviction. The court sentenced Johnson as a fourth-offense habitual offender to concurrent prison terms of 150 to 300 months for the assault with intent to do great bodily harm conviction, 5 to 10 years each for the carrying a weapon with unlawful intent conviction, and the felon in possession conviction, to be served consecutive to a five-year term of imprisonment for the felony-firearm, second offense, conviction.[1] Finally, the court sentenced Burney to concurrent prison terms of 6 to 10 years for the assault conviction and 10 to 60 months for the carrying a weapon with unlawful intent conviction, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. All three defendants appeal as of right. In each case, while retaining jurisdiction, we remand for further findings of fact and supplementation of the record regarding the trial court's mid-trial closure of the courtroom. We shall hold Brown's sentencing issues in abeyance pending the proceedings on remand. We reject defendants' remaining claims of error and affirm on those issues as stated below.

## I. FACTS AND PROCEEDINGS

Defendants' convictions arise from the nonfatal shooting of Jamil Dismuke outside the Sam D Liquor Store in Detroit. On the night of November 22, 2014, Dismuke was walking toward the door of the store. His brother, Demond Davis, was outside the store, and their uncle, Richard Davis, was inside the store. A witness, Ashlee Kennedy, was also outside the store. Witnesses heard a barrage of gunshots, one of which struck Dismuke in the leg, causing him to fall in the store parking lot. After Richard pulled Demond inside the store, one of the defendants, allegedly Lorenzo Brown, came across the street, stood over Dismuke, and shot him in the head at close range. Richard and Demond observed this shooting on a security camera monitor inside the store. Dismuke recovered from the shooting, but sustained some degree of mental impairment.

The prosecution's theory at trial was that all three defendants were involved in firing gunshots at Dismuke, and that it was defendant Brown who shot Dismuke in the head. Kennedy

---

[1] Although the trial court pronounced its sentence orally, it appears that through inadvertence or clerical error that neither Johnson's conviction of nor sentence imposed for the felon in possession conviction appear on Johnson's Judgement of Sentence. The habitual fourth status also does not appear on Johnson's Judgment of Sentence. On remand, Johnson's Judgment of Sentence shall be corrected.

initially told the police that she did not know the identities of the shooters, but she later testified pursuant to an investigative subpoena that she knew the shooters by their nicknames. She identified Brown as the person who shot Dismuke in the head. At trial, Richard testified that he saw the three defendants at the corner outside the store before the shooting started. He did not know who shot Dismuke in the head. Demond identified the defendants as the persons being at the scene. He identified Brown as the person who shot Dismuke in the head based on his observations of the shooter's clothing on the store security video. Dismuke identified Brown as the person who shot him in the head, and identified Johnson and Burney as the other individuals who shot at him.

Defendants were tried jointly before a single jury. Before trial, the trial court denied Burney's motion for a separate trial. The primary factual issue at trial was the credibility of Kennedy, Richard Davis, and Demond Davis. The prosecutor introduced the video footage from the store surveillance cameras, but the officer who obtained a copy of the video footage from the store inadvertently failed to capture approximately one minute of feed from one of the cameras. This was the camera that would have recorded the point-blank shooting of Dismuke. The jury convicted all three defendants of the weapons charges. In addition, it convicted Brown of assault with intent to commit murder, but convicted Burney and Johnson of the lesser offense of assault with intent to do great bodily harm less than murder.

## II. PUBLIC TRIAL (DOCKET NOS. 327734, 327736, 327814)

During trial, Demond Davis became emotional during cross-examination by Burney's counsel and left the witness stand without permission. Demond informed the trial court that he felt intimidated by defendants' supporters among the courtroom spectators. He also mentioned that he was fearful because persons he believed were associated with defendants were parking outside his house, calling him, and following him. After Demond resumed testifying, Burney's counsel stated for the record that courtroom deputies had removed spectators, including Burney's mother, from the courtroom. All three defendants later moved for a mistrial, arguing that their right to a public trial had been violated. The trial court denied the motion, stating that it had exercised its discretion to remove spectators "because two very threatened witnesses testified, and one was indeed the victim of the crime."

All three defendants argue that the trial court violated their right to a public trial by removing spectators from the courtroom.[2] "Whether the circuit court violated [a] defendant's right to a public trial presents a question of constitutional law," which we review de novo. *People v Vaughn*, 491 Mich 642, 649-650; 821 NW2d 288 (2012).

The right to a public trial is guaranteed by the Sixth Amendment of the United States Constitution and article I, § 20 of the Michigan Constitution. *Vaughn*, 491 Mich at 650. Denial of a public trial is a structural error, that is, a defect "that affect[s] the framework of the trial, infect[s] the truth-gathering process and deprive[s] the trial of constitutional protections without

---

[2] Defendant Johnson raises this issue in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4.

which a trial cannot reliably serve as a vehicle for determining guilt or innocence." *People v Watkins*, 247 Mich App 14, 26-27; 634 NW2d 370 (2001). In *People v Kline*, 197 Mich App 165, 169; 494 NW2d 756 (1992), this Court quoted four requirements for total closure of a trial, as set forth in *Waller v Georgia*, 467 US 39, 48; 104 S Ct 2210; 81 L Ed 2d 31 (1984):

> (1) The party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, (2) the closure must be no broader than necessary to protect that interest, (3) the trial court must consider reasonable alternatives to closing the proceeding, and (4) it must make findings adequate to support the closure.

The Court in *Kline* noted that *Waller* "addressed total closure of a suppression hearing, and does not necessarily govern partial closures." *Kline*, 197 Mich App at 169-170. The *Kline* Court stated, "Because the effect of a partial closure does not reach the level of total closure, only a substantial, rather than a compelling, reason for the closure is necessary." *Id*. at 170. However, the Court applied these four requirements to its review of the trial court's decision to close the courtroom to all persons not related to the complainant, but within the context of a substantial reason for partial closure rather than a compelling reason for total closure. *Id*. at 171. This Court remarked that "[t]he age of an alleged victim, the nature of an alleged offense, and the potential for harm to the victim are appropriate factors to consider in weighing an accused's right to a public trial against the government's interest in protecting a victim from undue harm." *Id*. This Court then stated:

> In this case, the court undoubtedly considered these factors, as well as complainant's mental capacity and subsequent treatment at the trauma center, in deciding to partially close the courtroom. However, the court failed to make findings on the record in support of its order as required by the United States Supreme Court. Although we recognize that a defendant is not required to show prejudice to obtain relief for a violation of the right to a public trial, *United States v Galloway,* 937 F2d 542, 546 (C.A. 10, 1991), we do not think that the failure to make findings at the time of the partial closure requires reversal. In these circumstances, where the closure order appears to be narrowly drawn, we do not think that failure to state the findings on the record in and of itself, requires a new trial. The lack of findings prevents us from determining whether the defendant's right to a public trial was outweighed by the interest asserted by the government in protecting the complaining witness. To grant defendant a new trial under these circumstances without making that determination would not be in the public interest. Cf. *Waller, supra* (failure to hold suppression hearing in public did not require granting the defendant a new trial). [*Kline,* 197 Mich App at 171-172.]

This Court, while retaining jurisdiction, remanded the case to the trial court "with directions to supplement the record with the facts and reasoning upon which the partial closure of the courtroom was based." *Id*. at 171-172.

The right to a public trial is very strictly enforced. For example, in *Presley v Georgia*, 558 US 209; 130 S Ct 721; 175 L Ed 2d 675 (2010), the defendant's uncle was seated in the courtroom before jury voir dire began. The trial court instructed the man to leave the courtroom

and that floor of the courthouse, but advised him that he could return when jury selection was completed. When the defendant objected, the trial court replied that 42 prospective jurors were about to enter the courtroom and occupy the "audience" area of the courtroom. The trial court stated that the defendant's uncle "cannot sit and intermingle with members of the jury panel." *Id*. at 210. The defendant on appeal presented evidence "showing that 14 prospective jurors could have fit in the jury box and the remaining 28 could have fit entirely on one side of the courtroom, leaving adequate room for the public." *Id*. at 210-211. The Supreme Court held that the trial court violated the defendant's right to a public trial by failing to considering alternatives to closure. *Id*. at 214-215. The defendant also argued that the trial court erred in failing to identify "any overriding interest likely to be prejudiced absent the closure of *voir dire*." The Supreme Court noted that "broad concerns" about the "generic risk of jurors overhearing prejudicial remarks, unsubstantiated by any specific threat or incident," were not sufficient, because these concerns are present in all criminal trials. *Id*. at 215. However, the Court declined to rule on this claim of error "because even assuming, *arguendo*, that the trial court had an overriding interest in closing *voir dire*, it was still incumbent upon it to consider all reasonable alternatives to closure." *Id*. at 216. The Supreme Court reversed the defendant's convictions. *Id*.

In *Vaughn*, 491 Mich 642, the trial court closed the courtroom to the public during jury voir dire. The trial court did not provide a reason for the closure, and the defendant did not object. *Id*. at 647. Our Supreme Court addressed whether the right to a public trial could be forfeited or waived by the defendant's failure to timely assert his right to a public trial. *Id*. at 653. After concluding that the defendant was required to satisfy the plain error standard of review in regard to his unpreserved, forfeited claim of constitutional error, the Supreme Court held that the defendant had satisfied the first two prongs of this analysis, i.e., that the trial court erred in closing the courtroom without identifying the "overriding interest that is likely to be prejudiced" if the courtroom remained open, and that this was plain, clear, and obvious error. *Id*. at 665. With respect to the third prong, that the error affected the defendant's substantial rights, the Court concluded that violation of the right to public trial was a structural error and "intrinsically harmful, without regard to [its] effect on the outcome . . . ." *Id*. at 666. However, the Court emphasized that under the plain error standard, the defendant should be granted a new trial only if the error "resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 666-667 (citation and internal quotation marks omitted). The Court concluded that the closure did not seriously affect the fairness of the proceedings because both attorneys had conducted a "vigorous voir dire process," and each party "expressed satisfaction with the ultimate jury chosen." *Id*. at 668.

In this case, the prosecutor argues that the exclusion of spectators for the afternoon of April 30 was only a partial closing, requiring only a substantial reason for the closure, not a compelling one. However, it is unclear from the record whether any spectators were permitted to remain in the courtroom. Burney's counsel statement that Burney's mother and "at least three other civilian witnesses [sic]" were excluded from the courtroom suggests that only some persons were excused. However the prosecutor's statement that she had "no objection to the deputies quietly escorting everybody out," Brown's counsel's statement that "basically everybody in the courtroom" was escorted out, and the trial court's statement that "the public will be allowed back in the courtroom on Monday," suggest that all spectators may have been

-5-

excluded after Demond resumed testifying, and that they remained excluded for the remainder of the day.[3] It is not possible, from this record, to determine whether the closure was total or partial. Even if the closure was partial, the exclusion of Burney's mother suggests that the trial court did not differentiate between potentially threatening and non-threatening witnesses, and that the trial court did not make an exception for a defendant's immediate family.

Regardless of whether the closure was total, requiring a compelling justification, or partial, in which case a substantial reason will suffice, *People v Russell*, 297 Mich App 707, 720; 825 NW2d 623 (2012), the trial court did not satisfy the four requirements stated in *Waller*, 467 US 48, and *Kline*, 197 Mich App at 169. The trial court acted sua sponte in closing the courtroom, but it did not state its reason for the closure on the record or inform the parties of the closure until *after* the defense attorneys stated for the record that courtroom deputies had told Burney's mother and other spectators to leave. The trial court's then articulated reason was concern for Demond's and Dismuke's safety and sense of well-being. This concern is sufficient to satisfy the first requirement, namely that the trial court act to advance an overriding interest. *Kline*, 197 Mich App at 169. It is not clear, however, that the trial court satisfied the second requirement, that "the closure must be no broader than necessary to protect that interest." *Id*. The trial court stated, "It's in my sound discretion who comes into the courtroom," without addressing the defendants' arguments that the removal of spectators was unnecessarily broad. The trial court did not consider any alternatives to closing the courtroom, and it made no findings to support the closure. *Id*.

We conclude that the appropriate course of action in these cases is to follow the procedure in *Kline* and, while retaining jurisdiction, remand these cases to the trial court to complete the four requirements by making appropriate findings on the record regarding the extent of the closure (i.e., whether it involved all or only some of the spectators), whether that closure was tailored to protect the interests of avoiding witness intimidation, and whether any alternatives were available. As in *Kline*, 197 Mich App at 171-172, the "lack of findings prevents us from determining whether the defendant[s'] right[s] to a public trial [were] outweighed by the interest asserted" by the trial court.

III. REMAINING ISSUES IN DOCKET NO. 327734

A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant Brown raises two claims of ineffective assistance of counsel. Although Brown raised these claims in a motion for post-judgment relief, the trial court denied the motion. Because no *Ginther*[4] hearing was held, review of Brown's claim is limited to mistakes apparent from the record. *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). To establish

---

[3] The record indicates that Burney's mother was allowed to return after Demond testified.

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

ineffective assistance of counsel, a defendant must demonstrate "(1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014) (quotation marks and citation omitted).

Brown argues that his trial counsel was ineffective for failing to move for dismissal based on the prosecutor's failure to preserve the full video recording from the store's surveillance system. A defendant's due process right to evidence has been recognized in cases such as *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), and *Arizona v Youngblood*, 488 US 51; 109 S Ct 333; 102 L Ed 2d 281 (1988). A criminal defendant has a due process right to obtain exculpatory evidence possessed by the state if it would raise a reasonable doubt about the defendant's guilt. *Brady*, 373 US at 87; see also *People v Stanaway*, 446 Mich 643, 666; 521 NW2d 557 (1994). In *Brady,* 373 US at 87, the Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." To establish a *Brady* violation, a defendant must establish (1) that the prosecution has suppressed evidence, (2) that is favorable to the accused, and (3) when viewed in its totality, is material. *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014); see also *People v Stokes*, 312 Mich App 181, 190; 877 NW2d 752 (2015), lv pending.

In *Youngblood,* 488 US at 58, the Court held that the failure to preserve potentially useful evidence does not constitute a denial of due process absent a showing of bad faith by the police. To establish a *Youngblood* violation, "the defendant must show: (1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other reasonably available means." *United States v Jobson*, 102 F3d 214, 218 (CA 6, 1996).

In this case, there is no evidence that the police acted in bad faith in failing to obtain recorded video footage for the full relevant time span from camera 2. Sergeant Sullivan testified that the omission was inadvertent. Brown had the opportunity to cross-examine Sullivan, but did not elicit any testimony suggesting that he acted in bad faith. Moreover, Brown failed to demonstrate that the missing video footage was favorable to him, or that it had any apparent exculpatory value before its destruction. The prosecutor never saw the missing video footage. Richard and Demond were the only two witnesses to observe the video. Richard stated that he saw a person run up to Dismuke and stand over him, but he could not see what the person did. Demond testified that the video depicted Brown shooting Dismuke. Although Demond admitted that he could not see the shooter's face in the video, he recognized Brown by the clothing he had seen Brown wearing minutes before the shooting. When these witnesses' testimony is considered with testimony that the light outside the store was "dull," it appears that viewers could not determine whether Brown was the shooter in the video unless they had seen Brown's clothing immediately before the shooting.

Brown's affidavit also fails to provide support for his claim of ineffective assistance of counsel. Brown asserted his actual innocence, and stated that if the jury had been able to see the recording from camera 2, "they would have seen that the person who shot Jamil Dismuke in the

head did not do it execution style and that fact would have directly contradicted the testimony of the witnesses." Brown also cited Kennedy's conflicting statements. He argues that Kennedy's cousin shot Dismuke, and that Kennedy incriminated Brown to protect her cousin and to satisfy the prosecutor's demands. The affidavit also avers that the prosecutor promised favorable treatment in this case in exchange for Brown's assistance in solving other homicides. Brown's affidavit was not executed until after trial, and therefore could not have been offered in support of a motion to suppress. In addition, his alleged meeting with the prosecutor occurred in September 2015, five months after the trial. Brown's assertion that the video would have shown that Dismuke was not shot "execution style" is unconvincing because he does not explain why the shooting could or could not be considered "execution style," or why walking up to Dismuke after he had been shot in the leg and shooting him in the head at close range in some manner other than "execution style" could mitigate the shooter's guilt of assault with intent to commit murder. Regardless of the "style" of the shooting, the undisputed evidence that Dismuke had a bullet wound near his ear, fired from close range, cannot be reconciled with any theory that the shooter acted with other than an intent to commit murder.

Under these circumstances, Brown cannot establish that counsel's failure to file a motion to dismiss was either objectively unreasonable or outcome determinative. *Douglas*, 496 Mich 592. Counsel is not ineffective for failing to make a futile motion. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Brown also argues that trial counsel was ineffective for failing to move to vacate Brown's felony-firearm conviction on the ground that the jury was not instructed on that offense with respect to Brown. "A court must properly instruct the jury so that it may correctly and intelligently decide the case." *People v Clark*, 453 Mich 572, 583; 556 NW2d 820 (1996). "Jury instructions must clearly present the case and the applicable law to the jury . . . . The instructions must include all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence." *People v McGhee*, 268 Mich App 600, 606; 709 NW2d 595 (2005). Instructional errors are presumed to be harmless, MCL 769.26, but the presumption may be rebutted by a showing that the error resulted in a miscarriage of justice. *People v Lukity*, 460 Mich 484, 493; 596 NW2d 607 (1999).

Although the trial court neglected to mention Brown's name before instructing the jury on felony-firearm, it properly instructed the jury on the elements of that offense, and Brown's verdict form clearly indicated that Brown was charged with this offense. Accordingly, any motion to vacate the conviction based on the omission of his name would have been futile. *Ericksen*, 288 Mich App 201.

## B. SENTENCING ISSUES

Brown raises two sentencing issues. He argues that the information containing the notice of habitual offender enhancement was not timely filed, and therefore, the trial court erred in sentencing him as a habitual offender. He also argues that the trial court improperly engaged in judicial fact-finding to score the sentencing guidelines offense variables, thereby increasing his guidelines range, in violation of his rights under the Sixth Amendment. Because we are remanding for further proceedings regarding the public trial issue, it would be premature to

address these issues at this time. Accordingly, we reserve consideration of Brown's sentencing issues until after completion of the proceedings on remand.

## IV. REMAINING ISSUES IN DOCKET NO. 327736

## A. SUFFICIENCY OF THE EVIDENCE

Johnson argues that there was insufficient evidence of his intent to do great bodily harm to support his conviction of assault with intent to do great bodily harm less than murder. We disagree.

"When reviewing a defendant's challenge to the sufficiency of the evidence," this Court reviews "the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011) (citation and quotation marks omitted). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Id.* (citation and quotation marks omitted).

The elements of assault with intent to do great bodily harm are "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder," which is the "intent to do serious injury of an aggravated nature." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014) (citation and quotation marks omitted); see also MCL 750.84(1)(a). Assault with intent to do great bodily harm is a specific intent crime. *Stevens*, 306 Mich App at 628. The requisite intent is "an intent to do serious injury of an aggravated nature." *Id.* (citation and quotation marks omitted). "Because of the difficulty in proving an actor's intent, only minimal circumstantial evidence is necessary to show that a defendant had the requisite intent." *Id.* at 629. "Intent to cause serious harm can be inferred from the defendant's actions, including the use of a dangerous weapon or the making of threats." *Id.* "Although actual injury to the victim is not an element of the crime . . . injuries suffered by the victim may also be indicative of a defendant's intent . . . ." *Id.* (citation and quotation marks omitted).

Johnson was identified as joining two other persons in firing guns at Dismuke from across a street. This evidence was sufficient to establish that Johnson assaulted Dismuke with the intent to do great bodily harm. Although Johnson suggests that firing a weapon in this manner is merely a "foolish" or "reckless" act, the jury could reasonably find that Johnson acted with the intent to cause serious harm. Moreover, even if the distance between Johnson and Dismuke lowered the likelihood that Dismuke would actually be shot, it did not prevent the jury from finding that Johnson still acted with an intent to cause great bodily harm. One of the bullets fired from across the street struck Dismuke's leg, and Demond testified that he heard bullets striking cars in the parking lot. The evidence was sufficient to support a finding that Johnson acted with the requisite intent.

## B. JOHNSON'S STANDARD 4 BRIEF IN DOCKET NO. 327736

Johnson raises additional issues in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, none of which warrant appellate relief.

## 1. KNOWING PRESENTATION OF PERJURED TESTIMONY

Johnson argues that reversal is required because the prosecutor knowingly introduced the perjured testimony of witnesses Ashlee Kennedy, Jamil Dismuke, and Demond Davis. Because Johnson did not object to the prosecutor's conduct or otherwise raise this issue below, it is unpreserved. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Accordingly, our review is limited to plain error affecting Johnson's substantial rights.

A "prosecutor may not knowingly use false testimony to obtain a conviction." *People v Lester*, 232 Mich App 262, 276; 591 NW2d 267 (1998), overruled in part on other grounds by *Chenault*, 495 Mich at 146. However, "not every contradiction is material and the prosecutor need not correct every instance of mistaken or inaccurate testimony." *People v Smith*, 498 Mich 466, 476; 870 NW2d 299 (2015) (citation and quotation marks omitted). Further, reversal is not necessary when the prosecutor does not attempt to conceal contradictions in a witness's testimony and defense counsel is afforded a sufficient opportunity to impeach the witness's credibility with his or her prior statements. *People v Parker*, 230 Mich App 677, 690; 584 NW2d 753 (1998).

The record clearly establishes that witnesses Kennedy, Dismuke, and Demond offered testimony at trial that conflicted with prior testimony or prior statements. However, there is no indication that the prosecutor elicited the trial testimony, knowing it to be false. Further, the prosecutor made no attempt to conceal the contradictions, which were disclosed to the jury on cross-examination. Under these circumstances, there was no plain error.

## 2. RIGHT TO BE PRESENT

Johnson argues that his constitutional right to be present during the proceedings was violated where he was not present at an April 14, 2015, final conference, and where he was absent during trial when the trial court and the attorneys discussed Demond Davis's departure from the witness stand. Because Johnson never objected below to his absence during these proceedings, this issue is unpreserved. Unpreserved claims of constitutional error are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

A criminal defendant has a statutory right to be present during his or her trial. MCL 768.3 provides, "No person indicted for a felony shall be tried unless personally present during the trial[.]" "Similarly, an accused's right to be present at trial is impliedly guaranteed by the federal and state Confrontation Clauses, US Const, Am VI; Const 1963, art 1, § 20, the Due Process Clauses, US Const, Am XIV; Const 1963, art 1, § 17, and the right to an impartial jury, Const 1963, art 1, § 20." *People v Mallory*, 421 Mich 229, 246 n 10; 365 NW2d 673 (1984) (citations omitted). "[I]t is no longer the law that injury is conclusively presumed from defendant's every absence during the course of a trial." *People v Morgan*, 400 Mich 527, 535; 255 NW2d 603 (1977). "[T]he test for whether defendant's absence from a part of his trial requires reversal of his conviction is whether there was any reasonable possibility that defendant was prejudiced by his absence." *People v Buie*, 298 Mich App 50, 59; 825 NW2d 361 (2012) (citation and quotation marks omitted).

Johnson has not established that he was prejudiced by his absence at either the final conference or during the discussion of Demond leaving the witness stand. The final conference discussion about the defendants' phone calls as evidence was limited to an assurance that the jury would be instructed that each jail call pertained only to the defendant who was a party to that call. There were no decisions regarding the admissibility of the phone calls. Johnson has not identified any issue pertaining to the phone calls that impacted his defense. Johnson also fails to identify any way in which he was prejudiced by his absence during the discussion about Demond. Even if it can be said that Johnson was affected by the trial court's decision to close the courtroom out of concern for Demond, the trial court did not make that decision during the conference. Accordingly, we reject this claim of error.

### 3. RIGHT TO PRESENT A DEFENSE

Johnson argues that the trial court's ruling excluding Kennedy's first written statement violated his right to present a defense. We disagree. The question whether a defendant was denied his constitutional right to present a defense is reviewed de novo. *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002). Because Johnson did not argue below that the trial court's ruling violated his constitutional right to present a defense, this issue is unpreserved. Accordingly, it is reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764.

"A criminal defendant has a state and federal constitutional right to present a defense." *Kurr*, 253 Mich App at 326, citing US Const, Ams VI, XIV, and Const 1963, art 1, § 13. "However, an accused's right to present evidence in his defense is not absolute." *People v Unger*, 278 Mich App 210, 250; 749 NW2d 272 (2008). The defendant's interest in presenting evidence must "accommodate other legitimate interests in the criminal trial process." *Id*. (citation and quotation marks omitted). States have "a legitimate interest in promulgating and implementing [their] own rules concerning the conduct of trials." *Id*.

Although the trial court excluded the written statement, it allowed defendants to impeach Kennedy with the statement. The substance of Kennedy's prior statements to the police was introduced, and Kennedy admitted making the statements, but claimed they were untrue. Kennedy also admitted that some of her statements at the investigative subpoena proceeding were based on information she received from other persons. The trial court ruled that Kennedy's prior written statement was not admissible under MRE 612(a), which states that if "a witness uses a writing . . . to refresh memory, an adverse party is entitled to have the writing . . . produced at the trial . . . ." Johnson does not address this evidentiary rule. Although Johnson argues that Kennedy's credibility was crucial, it was only the written document that was excluded from evidence. The jury otherwise heard the contents of Kennedy's statement, and heard her admission that she signed it. Exclusion of the document did not compromise Johnson's ability to present his defense that the prosecution's witnesses, and especially Kennedy, were not credible. Accordingly, there was no plain error.

### V. REMAINING ISSUES IN DOCKET NO. 327814

## A. MOTION FOR SEVERANCE

Burney argues that the trial court erred in denying his motion for a separate trial. He argued below that a separate trial was necessary because evidence of Johnson's telephone calls would be prejudicial to his defense. He claimed a right to mandatory severance under MCR 6.121(C), but did not argue that he should be granted discretionary severance under MCR 6.121(D). Therefore, this issue is preserved only with respect to severance under MCR 6.121(C). Unpreserved issues are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764.

Discretionary severance under MCR 6.121(D) "lies within the discretion of the trial court." *People v Hana*, 447 Mich 325, 346; 524 NW2d 682 (1994), amended 447 Mich 1203 (1994). The trial court's decision denying mandatory severance under MCR 6.121(C) will be affirmed if the defendant fails to demonstrate that his substantial rights were prejudiced at trial. *Hana*, 447 Mich at 346-347; *People v Bosca*, 310 Mich App 1, 43-44; 871 NW2d 307 (2015), lv pending.

MCR 6.121 provides:

**(A) Permissive Joinder.** An information or indictment may charge two or more defendants with the same offense. It may charge two or more defendants with two or more offenses when

(1) each defendant is charged with accountability for each offense, or

(2) the offenses are related as defined in MCR 6.120(B).

When more than one offense is alleged, each offense must be stated in a separate count. Two or more informations or indictments against different defendants may be consolidated for a single trial whenever the defendants could be charged in the same information or indictment under this rule.

**(B) Right of Severance; Unrelated Offenses.** On a defendant's motion, the court must sever offenses that are not related as defined in MCR 6.120(B).

**(C) Right of Severance; Related Offenses.** On a defendant's motion, the court must sever the trial of defendants on related offenses on a showing that severance is necessary to avoid prejudice to substantial rights of the defendant.

**(D) Discretionary Severance.** On the motion of any party, the court may sever the trial of defendants on the ground that severance is appropriate to promote fairness to the parties and a fair determination of the guilt or innocence of one or more of the defendants. Relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of defendants or the complexity or nature of the evidence, the convenience of witnesses, and the parties' readiness for trial.

"Severance is mandated under MCR 6.121(C) only when a defendant provides the court with a supporting affidavit, or makes an offer of proof, that clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice." *Bosca*, 310 Mich App at 43-44, quoting *Hana*, 447 Mich at 346-347. "[I]ncidental spillover prejudice, which is almost inevitable in a multi-defendant trial, does not suffice" to mandate severance. *Id*. at 349, quoting *United States v Yefsky*, 994 F2d 885, 896 (CA 1, 1993).

Burney's brief in support of his motion for severance did not address the content of Johnson's phone calls. He argued instead that introduction of Johnson's phone calls would violate his rights under the Confrontation Clause, US Const, Am VI; Const 1963, art 1, § 20. However, Burney's failure to identify any statement in Johnson's phone calls that directly or indirectly incriminated Burney precludes this Court from reversing the trial court's order denying Burney's motion for severance under MCR 6.121(C).

Burney argues on appeal that he should have been granted severance under MCR 6.121(D) because there was a danger that the jury would reach inconsistent and irreconcilable verdicts by finding that the defendant who shot Dismuke in the head was guilty of only assault with intent to do great bodily harm, but also finding that the other two defendants were guilty of the higher offense of assault with intent to commit murder. Burney does not explain how this possibility entitled him to severance. Moreover, to the extent there was such a danger, Burney was not disadvantaged because he was convicted of assault with intent to do great bodily harm. Under these circumstances, there was no plain error and no abuse of discretion in the trial court's decision denying severance. *Carines*, 460 Mich at 763-764; *Bosca*, 310 Mich App at 43.

## B. OTHER ACTS EVIDENCE

Burney argues that reversal is required because he was prejudiced by the improper admission of other acts evidence that Demond had seen him in possession of a weapon on a prior occasion. He also argues that defense counsel was ineffective for not moving to strike Demond's affirmative answer after the trial court sustained a defense objection to the question. This issue arises from the following line of questioning during the prosecutor's re-direct examination of Demond:

> *Q*. You said you were friendly with Defendant Brown?
>
> *A*. Yes.
>
> *Q*. And Waddell?
>
> *A*. Yes.
>
> *Q*. You guys used to do things together?
>
> *A*. Yes.
>
> *Q*. Did you ever see either one of them with a weapon when you guys were friendly?

*A*. Yes.

Brown's counsel objected.  The trial court sustained the objection, but Demond answered the question, "Yes."  Brown's counsel objected again.  The prosecutor asked, "Who did you see with a weapon?"  Brown's counsel objected, and the trial court sustained the objection.  Demond did not give an answer to the question of which defendant he saw with a gun.  Burney argues that he was prejudiced by Demond's answer, which he characterizes as inadmissible and irrelevant testimony under MRE 404(b).

MRE 404(b)(1) prohibits "evidence of other crimes, wrongs, or acts" to prove a defendant's character or propensity to commit the charged crime, but permits such evidence for other purposes, "such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material."  Evidence of other crimes or bad acts is admissible under MRE 404(b)(1) when (1) it is offered to show something other than character or propensity; (2) it is relevant under MRE 401; and (3) its probative value is not substantially outweighed by the danger of unfair prejudice, MRE 403.  *People v VanderVliet*, 444 Mich 52, 74–75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).  The prosecution must explain how the evidence is relevant to a proper purpose.  *People v Dobek*, 274 Mich App 58, 86; 732 NW2d 546 (2007).

We do not agree that evidence that Demond previously saw Burney or Brown with a weapon constitutes evidence or a prior act to prove the defendant's character.  However, the bare fact that Demond saw one or both of them with a weapon, without any information regarding the circumstances, reveals nothing about their propensity to commit a violent crime.  Burney argues that the jury was left with the impression "that the defendants, in general, and Mr. Burney, in particular do nothing but walk around the streets of Detroit armed," but this hyperbolic inference is not reasonable.  Moreover, the jury did not learn if Burney was the person Demond saw with the weapon.  To the extent that Demond's improper answer can be considered evidentiary error, it was harmless.  A preserved evidentiary error is harmless unless, " 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative."  *Lukity*, 460 Mich at 495-496, quoting MCL 769.26.  Considering that the trial court sustained the objection to the testimony, that the limited answer provided revealed nothing about Burney's propensity to commit a violent crime, and that it was never disclosed that Burney was the person who Demond saw with the weapon, it is not more probable than not that any error was outcome determinative.  In addition, under these circumstances, Burney cannot demonstrate that his counsel was ineffective for failing to request a cautionary instruction.

In all three cases, we affirm in part and remand for further proceedings consistent with this opinion, including the ministerial task of correcting Johnson's judgment of sentence as indicated in footnote two.  We retain jurisdiction.


/s/ Kurtis T. Wilder
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto

# Court of Appeals, State of Michigan

## ORDER

People of MI v Lorenzo Lamont Brown; People of MI v Teri Bernard Johnson; & People of MI v Waddell Poole Burney

Docket No.  327734; 327736; & 327814

LC No.  14-011033-01-FC; 15-000469-01-FC; & 14-011033-02-FC

Kurtis T. Wilder
Presiding Judge

Mark J. Cavanagh

Deborah A. Servitto
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 21 days of the Clerk's certification of this order, and they shall be given priority on remand and shall be concluded within 84 days. As stated in the accompanying opinion, the trial court, on the record, shall make appropriate findings to the extent of the closure (i.e., whether it involved all or only some of the spectators) and then make findings as to the four requirements set forth in *People v Kline*, 197 Mich App 165, 169; 494 NW2d 756 (1992). The proceedings on remand are limited to these issues.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

NOV 29 2016

Date

Chief Clerk