# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

STEPHEN FOSTER,

        Defendant-Appellant.

UNPUBLISHED
April 17, 2018

No. 337220
Wayne Circuit Court
LC No. 16-005410-01-FC

Before: SAWYER, P.J., and HOEKSTRA and MURRAY, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of second-degree murder, MCL 750.317; carrying a concealed weapon, MCL 750.227; felon in possession of a firearm, MCL 750.224f; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced to 18 to 24 years in prison for the second-degree murder conviction, a consecutive two-year prison term for the felony-firearm conviction, and time served (200 days) for the carrying a concealed weapon and felon in possession of a firearm convictions. We affirm.

On January 12, 2015, at approximately 9:30 a.m., the victim, Gregory Powell, was shoveling snow at his grandmother's house on Faust Street in Detroit. A man, later identified as defendant, who had been standing at the corner of Faust Street and Warren Avenue for several minutes, walked down Faust Street to the driveway where Powell was shoveling snow. The two men had a "tussle" before defendant pulled out a gun and shot Powell. Powell later died of gunshot wounds to his head, abdomen, back, and arm.

Curtis Miller, an employee of Star Auto Wash and Detail, located approximately three houses down from the scene of the shooting, identified defendant as the shooter. After hearing gunshots and then observing defendant fire one shot at Powell, Miller ran to the scene of the shooting. Miller testified that he made eye contact with defendant as defendant was running away from the scene. Miller further testified that he saw defendant standing near the auto wash earlier that morning, and that he had seen defendant talking to Powell once before, in the summer. Defendant presented several alibi witnesses at trial, who testified that defendant was at a friend's house at the time of the shooting. In addition, defendant presented evidence that Powell had had an argument with an unidentified man the evening before the shooting.

-1-

Defendant first argues that the trial court erred by partially closing the courtroom during the sentencing hearing. Because defendant forfeited his right to a public trial by failing to timely object to the court's closure of the courtroom, he is not entitled to relief unless he can establish "(1) that the error occurred, (2) that the error was 'plain,' (3) that the error affected substantial rights, and (4) that the error either resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Vaughn*, 491 Mich 642, 654; 821 NW2d 288 (2012).

After the verdict was read, four individuals in the gallery yelled out statements, such as "Y'all got the wrong guy," "He innocent. He innocent," "I love you, Pooder," and "Fox 2 News, baby." The judge ordered the individuals to sit down, admonished them, and stated, "I have the right, upon sentencing, not to let nobody [sic] in my courtroom from the family. And that's what I think I'm gonna' do, because you were disruptive and rude."

The judge further stated as follows:

> Now, whatever you all choose to do, that's fine. But I have the right to say you can't come back in my courtroom. And based on what I've seen, I'm gonna' let one family member from the family of Mr. Foster come. Anyone else, I'm gonna' exclude. And I have the right to do that.
>
> * * *
>
> So, right now, we'll figure out who is gonna' be the designee, with [defense counsel]; we'll figure that out, who will be the designee who will be allowed to be in here. But until I'm convinced that you all can be in here, and act responsibly and respectfully, then I'm gonna' exclude you.

"A defendant's Sixth Amendment right to a public trial is limited[.]" *Vaughn*, 491 Mich at 653. A courtroom may be closed, even over a defendant's objection, where (1) the party seeking to close the courtroom advances an overriding interest that is likely to be prejudiced, (2) the closure is no broader than is necessary to protect that interest, (3) the trial court has considered reasonable alternatives to closing the courtroom, and (4) the trial court makes findings adequate to support the closing. *Id*. at 653; MCR 8.116(D). When a courtroom is only partially closed,[1] rather than totally closed, a lesser standard applies. "Because the effect of a partial closure does not reach the level of total closure, only a substantial, rather than a compelling, reason for the closure is necessary." *People v Kline*, 197 Mich App 165, 170; 494 NW2d 756 (1992).

---

[1] "A partial closure occurs where the public is only partially excluded, such as when family members or the press are allowed to remain, or when the closure order is narrowly tailored to specific needs." *People v Kline*, 197 Mich App 165, 170 n 2; 494 NW2d 756 (1992) (citations omitted).

Here, the trial court identified a substantial interest to be protected. Specifically, the trial court indicated that it was partially closing the courtroom to prevent disruption and distractions in the proceedings, and to maintain the decorum of the courtroom. A trial court is entitled to control the proceedings in its courtroom. *People v Johnson*, 315 Mich App 163, 179; 889 NW2d 513 (2016). Furthermore, while the court did not limit the closure to the individuals that caused the disruption after the verdict, the court allowed one member of defendant's family to be present at the sentencing hearing. The trial court did not expressly consider reasonable alternatives to closing the courtroom on the record. Nevertheless, while the trial court initially indicated that it intended to exclude all members of defendant's family from the courtroom, it ultimately concluded that it would allow one member of the family to be in the courtroom during sentencing. Thus, it appears that the court did, in fact, consider, and ultimately ordered, an alternative to a complete closure of the courtroom. Finally, while defendant argues that the trial court did not adequately explain the reasons for the closure, the trial court stated on the record that it was partially closing the courtroom due to the repeated outbursts of certain individuals in the gallery, which disrupted the proceedings. Thus, there was no error that affected defendant's substantial rights.

Defendant next argues that the trial court erred in denying his motion to suppress Miller's and John Shipkowksi's identifications of him as the perpetrator on the basis that the photographic array procedure was impermissibly suggestive. A trial court's decision after a suppression hearing regarding the admission of identification evidence is reviewed for clear error. *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *Id.*[2]

"A photographic identification procedure or lineup violates due process guarantees when it is so impermissibly suggestive as to give rise to a substantial likelihood of misidentification." *McDade*, 301 Mich App at 357. The suggestiveness of an identification procedure should be evaluated in light of the totality of the circumstances. *Id.*

Defendant first argues that the photographic array procedure was impermissibly suggestive because the police used an usual procedure, showing the witness three sets of six photographs. Defendant notes that, while it was unclear whether Miller and Shipkowski identified him in the first or second set of photographs, the police showed the witnesses the other set(s) of photographs even though they had already identified defendant in the earlier set. Defendant does not explain how this procedure was impermissibly suggestive, other than by arguing that the procedure was "unusual" and did not "make sense." In determining that the procedure was not unduly suggestive, the trial court stated that the use of three sets of

---

[2] As the prosecution points out, although defendant refers to both Miller's and Shipkowski's identifications on appeal, his pretrial motion only involved Miller's identification. Nonetheless, with regard to Shipkowski's identification, the resolution of this issue would be the same under the plain error standard of review for unpreserved issues. See *People v Wilson*, 242 Mich App 350, 355; 619 NW2d 413 (2000).

photographs, rather than one set, was "just a style difference," and concluded that the procedure actually strengthened the identification process because it allowed the witness to see more photographs. We tend to agree with the trial court's reasoning. Furthermore, given defendant's failure to articulate how the procedure was improper, he has not shown clear error in the trial court's determination that the procedure was not unduly suggestive.

Defendant next argues that the photo array procedure was impermissibly suggestive because the photographs used did not match the description of the perpetrator given by the eyewitnesses. Officer Michael Crosby explained at the hearing on defendant's motion to suppress that each of the three photo arrays contained one photograph of an individual that was a target of the investigation, as well as five other photographs of individuals that looked like the target photograph. When defense counsel indicated during his questioning of Officer Crosby that he would expect that the photographs in the lineup would match the description of the perpetrator given by the witnesses, Officer Crosby testified that "it depends on why I would create that photo lineup, the information I had, and why that person was put in a lineup." Officer Crosby's testimony indicates that his investigation identified defendant and two other individuals as suspects, and that the photo array was used to confirm or deny the results of the investigation. Defendant has not cited any legal authority indicating that the photographs in an array must match the description of the perpetrator given by the witnesses. Defendant may not "merely announce his position and leave it to this Court to discover and rationalize the basis for his claims[.]" *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). We conclude that defendant has shown no error with respect to the photographic array identification procedure.

Defendant next argues that the trial court erred in denying his motion for a directed verdict of acquittal. This Court reviews a trial court's decision regarding a motion for a directed verdict of acquittal in a light most favorable to the prosecution to "determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Schrauben*, 314 Mich App 181, 198; 886 NW2d 173 (2016) (quotation marks and citation omitted).

Defendant argues that the trial court erred by denying his motion for a directed verdict of acquittal because the testimony of Miller, the only witness to place defendant at the scene of the shooting, was insufficient to support the murder charge. Specifically, defendant argues that Miller's testimony was unreliable where Miller initially denied seeing the shooter when questioned by the police and where the window through which Miller claimed to have seen the shooter was too small and far away from the shooting site to support a reliable identification.

Miller admitted that he initially lied to the police, telling them that he did not see anything, but then changed his mind and agreed to talk to the police about what he witnessed after an officer told him that he could help somebody or save a life by cooperating. Before announcing its verdict, the trial court specifically found that Miller's testimony was credible, even though he initially told the police that he did not see anything. Thus, the trial court was aware that Miller initially lied to the police. "This Court will not interfere with the trier of fact's determinations regarding the weight of the evidence or the credibility of witnesses." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014).

Defendant next argues that Miller's identification testimony was unreliable because the window through which Miller observed the shooting was too small for a reliable identification. Miller testified that, through the window of one of the bays at the car wash, he saw defendant walk over to Powell and pull something from his pocket that was bigger than a cell phone. He then looked down at the car he was working on and heard one or two gunshots. When he looked out the window again, he saw a tussle between defendant and Powell at the end of the driveway. Miller testified that the windows were approximately 15 inches by 8 inches in size and that they were buffed and polished every month. After seeing the tussle, Miller opened the garage door and saw defendant shoot Powell.

Again, "[t]his Court will not interfere with the trier of fact's determinations regarding the weight of the evidence or the credibility of witnesses." *Stevens*, 306 Mich App at 628. Defendant has not shown that Miller's testimony contradicts indisputable physical facts or laws, that it was so inherently implausible that it could not be believed by a reasonable juror, or that it presented other exceptional circumstances that would justify removing the credibility determination from the trier of fact. See *People v Lemmon*, 456 Mich 625, 643-644; 576 NW2d 129 (1998). Furthermore, Miller testified that he saw defendant shoot Powell after he opened the garage door. Defendant is not entitled to relief on the basis of this argument.

Defendant next argues that the trial court erred in failing to identify the facts on which it relied to deny the motion for a directed verdict. MCR 6.419(D), however, does not require a trial court to make findings of fact with respect to a denial of a motion for a directed verdict of acquittal. Furthermore, the trial court did set forth sufficient facts on which its decision was based where the court recounted the testimonies of Miller, Shipkowski, Christopher Graham, and Thomas Chapman before concluding that, when viewed in a light most favorable to the prosecutor, a rational trier of fact could have found from the evidence that defendant committed the charged crimes. Therefore, defendant has not shown that he is entitled to relief with respect to this issue.

In his amended brief filed pursuant to Administrative Order 2004-6, Standard 4, defendant argues that the trial court erred in failing to instruct itself regarding manslaughter. In a bench trial, however, the trial court is not required to instruct itself regarding lesser included offenses. *People v Cazal*, 412 Mich 680, 686; 316 NW2d 705 (1982). Therefore, defendant is not entitled to relief on the basis of this argument.

Defendant next argues in his Standard 4 brief that the evidence was insufficient to prove beyond a reasonable doubt that he acted with malice. He contends that the tussle between the perpetrator and Powell immediately before the shooting indicates that the shooting was the result of provocation rather than malice. When determining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

The elements of second-degree murder are "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Goecke*, 457 Mich 442, 464; 579 NW2d 868 (1998). "The prosecution is not required to prove that the defendant actually intended to harm or kill," but "must prove the intent to do an act that is in obvious disregard of life-endangering consequences." *People v Bergman*, 312 Mich App 471, 487; 879 NW2d 278 (2015).

There was evidence that the perpetrator shot Powell with a gun and that Powell died from the gunshot wounds. Malice may be inferred from the use of a dangerous weapon. *People v Bulls*, 262 Mich App 618, 627; 687 NW2d 159 (2004). Furthermore, while defendant now argues that the shooting was a result of provocation rather than malice, defendant did not argue at trial that the shooting was a result of provocation, but argued that he was not the perpetrator. In fact, there was little evidence at trial regarding the "tussle" between the perpetrator and Powell, other than the fact that the tussle occurred. Therefore, there was no evidence from which the trier of fact could have found that the tussle was adequate provocation. Accordingly, defendant has not shown that the evidence was insufficient to support a second-degree murder conviction.

Finally, Defendant argues in his Standard 4 brief that the evidence was insufficient to convict him of second-degree murder where Miller's identification testimony was unreliable. Defendant contends that Miller's testimony was unreliable where none of the evidence corroborated his identification and none of the other witnesses at the scene were able to identify the shooter. The evidence, however, indicated that Miller may have had a better opportunity to observe the shooter than the other witnesses at the scene. While defendant refers to other minor inconsistencies between Miller's testimony and the testimony of other witnesses, these inconsistencies do not render Miller's testimony unreliable where the trier of fact was aware of the inconsistencies. The credibility of identification testimony is solely for the trier of fact to determine. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000); *People v Avant*, 235 Mich App 499, 506; 597 NW2d 864 (1999).[3]

Defendant next argues that the police failed to investigate comments that may have been made by Powell to Tyrae Smith, with whom Powell was speaking on his cell phone when he was

---

[3] Contrary to defendant's argument, the medical examiner's report did not state that Powell was in the standard anatomical position when the wounds were sustained, but indicated that "the wound tracks are described when the body is in the standard anatomical position." Thus, the report merely indicated that the medical examiner was describing the wounds as if the body were in the standard anatomical position. Defendant has not shown that he is entitled to relief with respect to this issue.

shot.  Tyrae Smith testified at trial, however, and did not indicate that Powell identified the shooter or made any other relevant statements during the call.  Specifically, Tyrae Smith testified that, while talking to Powell on the phone, she heard two gunshots.  She then heard Powell call her name and say that he had been shot, before going quiet.  Because Tyrae Smith testified for the prosecution at trial, it appears that the police did, in fact, investigate any statements Powell may have made to her during the telephone call.  Therefore, defendant has not shown that he is entitled to relief on the basis of this issue.

Finally, while defendant argues that the police conducted two interviews indicating that he was not the shooter, he provides no further discussion or analysis of this issue.  Again, defendant may not "merely announce his position and leave it to this Court to discover and rationalize the basis for his claims[.]" *Kelly*, 231 Mich App at 640-641.  Defendant has not shown that he is entitled to relief on the basis of this issue.

Affirmed.

/s/ David H. Sawyer
/s/ Joel P. Hoekstra
/s/ Christopher M. Murray