*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
September 26, 2019

v

DONTAVIOUS ANTHONY BELL,

        Defendant-Appellant.

No. 342753
Macomb Circuit Court
LC No. 2017-000266-FH

Before: O'BRIEN, P.J., and BECKERING and LETICA, JJ.

PER CURIAM.

A jury convicted defendant, Dontavious Anthony Bell, for one count of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(a) (sexual penetration of victim between 13 and 16 years of age), and two counts of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(a) (sexual contact with a person between 13 and 16 years of age).[1] The trial court sentenced him to 5 to 15 years in prison for the CSC-III conviction and 365 days in jail for the CSC-IV convictions. Defendant appeals his convictions as of right. We affirm.

This case arises out of sexual encounters alleged to have occurred between defendant and AK, who was 14 years old at the time. In July 2016, defendant was dating AK's mother and was frequently at the home AK shared with her mother and two siblings. Defendant would supervise AK and her younger sibling while AK's mother was at work. AK testified that, during the month of July, she had numerous sexual encounters with defendant, which included kissing, fondling, digital penetration, and vaginal penetration. When AK eventually told her mother about the sexual encounters, her mother contacted the police, who arrested defendant. The prosecutor subsequently charged defendant with three counts of CSC-III and three counts of CSC-IV. As indicated, a jury found him guilty of one count of CSC-III and two counts of CSC-IV, and acquitted him of the remaining charges.

---

[1] The jury acquitted defendant of two counts of CSC-III and one count of CSC-IV.

## I. PROSECUTORIAL MISCONDUCT

Defendant argues that the prosecutor committed prosecutorial misconduct[2] (1) when she improperly referred to AK as the "victim" throughout the trial, and (2) by improperly shifting the burden of proof to defendant during her closing and rebuttal arguments. We disagree as to both of defendant's arguments. Defendant did not preserve these issues for appellate review by objecting to any alleged error or requesting a curative instruction. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Therefore, our review is for plain error affecting defendant's substantial rights. *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017). "An error affects substantial rights when it 'could have been decisive of the outcome' of the case." *People v Bailey*, 310 Mich App 703, 715-716; 873 NW2d 855 (2015), quoting *People v Grant*, 445 Mich 535, 547; 520 NW2d 123 (1994). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (quotation marks and citation omitted).

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). We decide issues of prosecutorial misconduct on a case-by-case basis, "examin[ing] the entire record and evaluat[ing] a prosecutor's remarks in context[,]" which is to say, "in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Id*. at 64. "Generally, prosecutors are accorded great latitude regarding their arguments, and are free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009).

While it is true that the prosecution referred to AK as "victim" multiples times throughout the trial, these references do not constitute plain error. Pursuant to MCL 750.520a(s), " 'victim' means the person alleging to have been subjected to criminal sexual conduct." AK alleged that she was subjected to criminal sexual conduct. Therefore, under Michigan law, AK was, and the prosecutor properly referred to her as, a "victim."

Defendant relies on the Michigan Supreme Court's decision in *People v Stanaway*, 446 Mich 643; 521 NW2d 557 (1994), to argue that it was prosecutorial misconduct for the prosecutor to refer to AK as the victim because "the legal status of an accuser as victim does not obtain until a conviction is entered." *Stanaway*, 446 Mich at 677 n 3. Defendant's reliance is misplaced. The Court made this statement in reference to MCL 600.2157a, which extended privilege to communications between a victim and a sexual assault or domestic assault counselor. The relevant issue before the *Stanaway* Court was not whether the prosecution may properly refer to a complainant in a criminal sexual conduct case as the victim, but whether statutorily

---

[2] This Court recently explained in *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015), that a fairer label for most claims of prosecutorial misconduct would be " 'prosecutorial error,' " while only the most extreme cases rise to the level of " 'prosecutorial misconduct.' " However, we will use the phrase "prosecutorial misconduct" because it has become a term of art.

privileged records are discoverable by the accused in a criminal trial. *Stanaway*, 446 Mich at 648-649. The particular statement upon which defendant relies appears in a footnote explaining why a suggestion advanced by a concurring justice was unworkable. Because it is an incidental remark that is not essential to the Supreme Court's decision, the statement is obiter dictum. See *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 437; 751 NW2d 8 (2008). "A statement that is dictum does not constitute binding precedent under MCR 7.215(J)(1)." *Id*. Thus, the statement upon which defendant relies was inessential to the *Stanaway* decision, and we are not bound by it in determining the present issue on appeal. Thus, *Stanaway* provides no support for defendant's argument, and, as indicated, the definition of "victim" under Michigan law comports with AK's status at trial. Accordingly, we find no prosecutorial misconduct or error in the prosecutor's references to AK as the "victim."

Turning next to defendant's assertion that the prosecutor improperly shifted the burden of proof to defendant during her closing and rebuttal arguments, "[t]he propriety of a prosecutor's remarks depends on all the facts of the case." *Dobek*, 274 Mich App at 64 (quotation marks and citation omitted). This Court evaluates a prosecutor's comments "in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Id*.

> A prosecutor may not imply in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof. Also, a prosecutor may not comment on the defendant's failure to present evidence because it is an attempt to shift the burden of proof. However, a prosecutor's argument that inculpatory evidence is undisputed does not constitute improper comment. A prosecutor may also argue that the evidence was uncontradicted even if the defendant is the only person who could have contradicted the evidence. [*People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010) (citations omitted).]

In the present case, defendant contended in his opening statement that, in the absence of any physical evidence of, or witnesses to, the alleged sexual conduct, the case turned on the credibility of the prosecution's witnesses, especially AK. That AK might have a motive behind her accusations was a theme defense counsel pursued in his cross-examination of her. Counsel asked AK whether she was angry when she found out that her mother was having sex with someone other than her father, who, at the time, was separated from AK's mother, or when she realized that she was the last person to know that her mother was having a sexual relationship with defendant. Defense counsel asked AK if she wanted defendant out of the house and told her mother that defendant had sexual relations with her in order to accomplish this end. AK answered that she was angry that her mother was having sex with someone other than her father, but she was not upset to learn that she and defendant were having a sexual relationship, and she did not want defendant out of the house. On redirect, AK answered negatively when the prosecutor asked if she were fabricating the allegations against defendant. She admitted being angry with defendant for what he had done, and denied that she had had romantic feelings for him.

In her closing argument, the prosecutor stated:

Another thing I want to talk about is motive. I anticipate the Defendants [sic] come up here and talks [sic] about motive. That [AK] had a motive to try and get the Defendant, try to get him out of the house.

But if you rely on the record in this case and everything that came during the course of the testimony, there was nothing in this record that indicates that [AK] wanted him out of the house, that she had a vendetta or vindictive teenager [sic]. Where is that malicious young teenager trying to get the Defendant? Was that the girl that you saw there?

Defendant argues that this statement impermissibly implied to the jury that he had to prove his innocence by introducing evidence of AK's motive to lie. However, viewed in the light of "the relationship the comments bear to the evidence admitted at trial," *Dobek*, 274 Mich App at 64, the prosecutor's comments responded to defendant's own attempts to suggest that AK fabricated allegations against defendant because she wanted defendant out of the house. Thus, the prosecutor's statements were proper comments on the weakness of this specific theory of defense and did not constitute prosecutorial misconduct. See *Fyda*, 288 Mich App at 464-465.

Likewise, defendant asserts that comments by the prosecutor during her rebuttal argument also implied that defendant had the burden to present evidence of AK's reason to lie. The prosecutor stated in relevant part:

Ladies and gentlemen of the jury during the course of the half hour, hour allocution by defense counsel did you hear any reason why [AK] made it up? Because I didn't.

Did you hear any reason why there is a reason to lie? Because I didn't.

Did you hear any motive as to why all these people are getting together to lie about the Defendant? I didn't.

And I know you didn't either. Why not? Why didn't we hear about a reason to lie? Why didn't we hear about a motive to lie? He didn't provide one. But what he tried to do is talk about things that she may have screwed or messed up or rearranged around and called it and that makes her uncredible [sic].

Again, viewed in the context of the entire trial, these comments continue the prosecutor's attack on the defense theory implied by defendant's cross-examination of AK and defense counsel's comments during his closing argument. During his closing argument, defendant reiterated the importance of credibility and pointed to numerous inconsistencies between AK's trial testimony, her testimony at the preliminary examination, and the accounts of defendant's conduct that she gave to others. Defendant further attacked AK's credibility by inviting the jury to wonder why AK did not remember much of what one would think were unforgettably traumatic experiences and to recall how AK's body language on the stand indicated that she might not be telling the truth. In addition, counsel reasserted the possibility that AK had a motive to lie by arguing that AK's view of defendant as big-brother-like changed once AK discovered that defendant and her mother were having a sexual relationship. Considered in a vacuum, the prosecutor's comments could seem to suggest that defendant had the burden of

providing evidence of AK's reason to fabricate allegations against him. Considered in the context of the trial testimony and defendant's arguments, however, they merely challenged the credibility of defendant's theory that AK was lying by arguing that the evidence did not support that theory. See *id*. at 464.

Even if we had deemed the prosecutor's comments improper, they would not provide grounds for reversal. See *Carines*, 460 Mich at 763-764. The trial court instructed the jury that it was to presume defendant innocent throughout the trial, that defendant did not have to prove his innocence, and that it should enter a guilty verdict only if it was convinced that the prosecutor had proved every element of the charged crimes beyond a reasonable doubt. In addition, the court instructed the jury to base its decision on evidence properly admitted at trial and that such evidence did not include the lawyers' arguments and questions to the witnesses. Defendant did not object to these instructions. "Jurors are presumed to follow instructions, and instructions are presumed to cure most errors." *People v Petri*, 279 Mich App 407, 414; 760 NW2d 882 (2008). That the jury acquitted defendant of three of the six charged counts suggests that the jurors carefully weighed the evidence in the present case and followed the trial court's instructions. Accordingly, we find no plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

## II. PUBLIC TRIAL

Finally, defendant argues that the trial court denied his right to a public trial when it closed the courtroom during AK's testimony. Specifically, defendant argues that the trial court excluded the public and press from the courtroom in violation of his Sixth Amendment right to a public trial when it failed to take certain measures, such as posting a sign on the courtroom door notifying the public and press that it could watch AK's testimony in the conference room. Again, we disagree. Whether the trial court violated defendant's right to a public trial is a question of constitutional law, which this Court reviews de novo. *People v Vaugh*, 491 Mich 642, 650; 821 NW2d 288 (2012).

"The right to a public trial has its roots in our English common law heritage." *Vaugh*, 491 Mich at 650 (quotation marks and citation omitted). "The Sixth Amendment of the United States Constitution expressly enumerates this right and states that a criminal defendant shall enjoy the right to a . . . public trial. . . ." *Id*. (quotation marks and citation omitted). "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions. . . ." *Waller v Georgia*, 467 US 39, 46; 104 S Ct 2210; 81 L Ed 2d 31 (1984) (quotation marks and citation omitted). "In addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury." *Id*.

"Although the right to an open trial is not absolute, that right will only rarely give way to other interests." *People v Kline*, 197 Mich App 165, 169; 494 NW2d 759 (2012). In *Waller*, the United States Supreme Court set forth the following test to determine whether total closure of a proceeding was justified:

(1) the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, (2) the closure must be no broader than necessary to protect that interest, (3) the trial court must consider reasonable alternatives to closing the proceeding, and (4) it must make findings adequate to support the closure. [*Id*. at 48; S Ct at 2216.]

As indicated, *Waller* involved the total closure of a courtroom at a suppression hearing. The case at bar involves a partial closing. "A partial closure occurs when the public is only partially excluded, such as when family members or the press are allowed to remain, or when the closure order is narrowly tailored to specific needs." *Kline*, 197 Mich App at 170 n 2 (citations omitted). "Because the effect of a partial closure does not reach the level of total closure, only a substantial, rather than a compelling, reason for the closure is necessary." *Id*. at 170. The remaining prongs of the *Waller* test are the same. See *id*. at 171 (indicating that the trial court should have made findings under the latter three prongs of the *Waller* test and remanding the matter with directions for the trial court to supplement the record with adequate findings.)

The prosecution had a substantial, or even compelling, interest in having AK testify to the sexual conduct allegedly perpetrated by defendant without fear of intimidation by defendant's family. *Waller*, 467 US at 48; S Ct at 2216. see *Kline*, 197 Mich App at 171 ("the government may have a substantial or compelling interest in protecting young witnesses who are called to testify in cases involving allegations of sexual abuse."). The closure of the courtroom only during AK's testimony was no broader than necessary to protect the prosecution's interest. *Waller*, 467 US at 48; S Ct at 2216. In addition, the trial court provided those excluded from the courtroom the alternative of watching AK testify on a closed-circuit television. *Id*. Finally, in the course of ruling on the prosecution's motion to close the courtroom, the trial court made findings adequate to support the closure.

The prosecutor moved for the courtroom to be closed during AK's testimony pursuant to MCL 600.2163a.[3] This statute authorizes a trial court to close the courtroom as follows:

(16) If upon the motion of a party made before trial the court finds on the record that the special arrangements specified in subsection (17)[4] are necessary to protect the welfare of the witness, the court shall order those special

---

[3] MCL 600.2163a(16) and (17) have been amended since the time of defendant's trial. MCL 600.2163a(16) and (17) now appear as MCL 600.2163a(18) and (19). However, we have provided the statute as it appeared at the time of defendant's trial.

[4] If a trial court "determines on the record that it is necessary to protect the welfare of the witness and grants the motion made under subsection (16)," MCL 600.2163a(17)(a) requires the court to exclude all person's not necessary to the proceeding from the courtroom during the witness's testimony. In addition, the court must broadcast the witness's testimony "by closed-circuit television to the public in another location out of sight of the witness." *Id*. The record shows that the trial court fully complied with these requirements.

arrangements. In determining whether it is necessary to protect the welfare of the witness, the court shall consider all of the following:

(a) The age of the witness.

(b) The nature of the offense or offenses.

(c) The desire of the witness or the witness's family or guardian to have the testimony in a room closed to the public.

(d) The physical condition of the witness.

The trial court found on the record that AK was 15 years old, that she would be testifying to criminal sexual offenses, and that she and her parents wanted the courtroom closed during her testimony because of the demeanor of defendant's family during her preliminary examination testimony. The trial court also inquired as to any physical conditions or issues with AK that the court needed to consider; the prosecutor answered that there was none. MCL 600.2163a(16)(d). The trial court's analysis pursuant to MCL 600.2163a(16) produced "the findings adequate to support closure" required by *Waller*.

Where this is a substantial reason for closing the courtroom, a partial closure like the one in the present case does not deny a defendant the right to a public trial. See *People v Russell*, 297 Mich App 707, 720; 825 NW2d 623 (2012) ("The limited capacity of the courtroom was a substantial reason for the closure, and thus, this partial closure did not deny defendant his right to a public trial."). The trial court did not violate defendant's right to a public trial by partially closing the courtroom, even if the trial court did not take any of the additional measures advocated by defendant. The trial court had a substantial reason for closing the courtroom and an order narrowly tailored to that reason. It provided anyone interested in AK's testimony with an alternative to being present in the courtroom, and it made adequate findings on the record. *Waller*, 467 US at 48; S Ct at 2216. Nothing more was required.[5]

Affirmed.

/s/ Colleen A. O'Brien
/s/ Jane M. Beckering
/s/ Anica Letica

---

[5] Defendant asserts that the record does not show that the trial court did not order a court officer to unlock the courtroom doors after AK's testimony, as if this were evidence that the trial court closed the courtroom longer than was required. However, the record does not show that the trial court ordered the court officer to lock the doors in the first place, but it does show that the trial court ordered the court officer to bring those excluded from the courtroom back into the courtroom after AK's testimony. This seems to us evidence that the trial court was careful that the closure last no longer than was necessary.