*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee/Cross-Appellant,

v

DOMINICK DONOVAN WILLIAMS,

      Defendant-Appellant/Cross-Appellee.

UNPUBLISHED
July 29, 2021

No. 352302
Macomb Circuit Court
LC No. 2018-003529-FC

Before: GADOLA, P.J., and JANSEN and O'BRIEN, JJ.

PER CURIAM.

Defendant was convicted, following a jury trial, of first-degree criminal sexual conduct
(CSC I), MCL 750.520b(1)(a) (victim under 13). The trial court sentenced defendant to serve 15
to 40 years in prison. Defendant appeals, and plaintiff cross-appeals, as of right. We affirm
defendant's convictions, but remand for resentencing in accordance with MCL 750.520b(2)(b).

Defendant, at age 18, was close friends for many years with complainant's older brothers,
and had become close with the entire family. On an occasion when defendant spent the night at
the family's home, complainant, age 12 at the time, found herself alone on the couch with
defendant, watching a movie while everyone else had fallen asleep. Complainant testified that
defendant held her hand under the blankets, and, less than 10 minutes later, defendant put his hand
into her shirt and under her bra to feel her breast while she felt frozen in fear. Complainant reported
that, five or 10 minutes later, defendant opened his pants, placed her hand on his penis, and moved
it up and down. Defendant then put his hand into her underwear, and moved two fingers in and
out of her vagina for about five to 10 minutes. According to complainant, defendant asked if he
might insert his penis into her vagina, and she said "no" before leaving the couch. The following
day, complainant disclosed the incident to her friends, who informed her family. Complainant's
brothers separately confronted defendant, who confirmed that he had sexually assaulted
complainant. Complainant's mother contacted the police.

On appeal, defendant argues that his trial attorney provided ineffective assistance in several
respects. We disagree. Plaintiff cross-appeals, arguing that the trial court erred by failing to
sentence defendant to the statutorily mandated minimum term of 25 years. We agree.

-1-

# I. ASSISTANCE OF COUNSEL

When there has been no evidentiary hearing below to develop a claim of ineffective assistance of counsel, review is limited to counsel's performance as revealed by the existing record. *People v Abcumby-Blair*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 347369); slip op at 8; *People v Unger* (*On Remand*), 278 Mich App 210, 253; 749 NW2d 272 (2008). The constitutional question whether an attorney provided ineffective assistance, depriving a defendant of his right to counsel, is reviewed de novo. *Unger (On Remand)*, 278 Mich App at 242.

A criminal defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. This "right to counsel encompasses the right to the 'effective' assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007) (citations omitted). The "[e]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). In order to prevail on a claim of ineffective assistance of counsel, a defendant must show (1) "that counsel's performance was deficient" and (2) "that counsel's deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007) (quotation marks and citation omitted). An attorney's performance is deficient if "it fell below an objective standard of professional reasonableness[.]" *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). The performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, "the result of the proceeding would have been different." *Id.*

## A. CLOSED COURTROOM

Defendant argues that his trial counsel provided deficient performance by agreeing that the courtroom should be closed for the testimony of complainant. Criminal defendants are constitutionally guaranteed a speedy and public trial. US Const, Am VI; Const 1963, art 1, § 20. See also *People v Kline*, 197 Mich App 165, 169; 494 NW2d 756 (1992). A public trial benefits a defendant by "ensuring that judge and prosecutor carry out their duties responsibly," and because it "encourages witnesses to come forward and discourages perjury." *Waller v Georgia*, 467 US 39, 46; 104 S Ct 2210; 81 L Ed 2d 31 (1984) (citations omitted). However, the right to a public trial may be limited by circumstances that "allow the closure of a courtroom during any stage of a criminal proceeding." *People v Vaughn*, 491 Mich 642, 653; 821 NW2d 288 (2012). MCL 600.2163a(16) allows a trial court to grant a party's motion for special arrangements to protect the welfare of a witness, such as closing the courtroom to unnecessary persons during the witness's testimony.

> (1) The party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, (2) the closure must be no broader than necessary to protect that interest, (3) the trial court must consider reasonable alternatives to closing the proceeding, and (4) it must make findings adequate to support the closure. [*Kline,* 197 Mich App at 169, citing *Waller*, 467 US at 48.]

When, as is the case here, the deprivation of public access "does not reach the level of total closure, only a substantial, rather than a compelling, reason for the closure is necessary." *Kline,* 197 Mich

App at 170. Relevant considerations include the age of the witness, the nature of the offense, and the potential harm to the witness. *Id*. at 171.

In this case, the trial court ordered the courtroom cleared before complainant's testimony, explaining that it was pursuant to a prior agreement, and offered an alternative room for those who wished to view the testimony on video. The trial court's reasoning for taking those actions were not placed on the record because defense counsel stipulated to them at a pretrial hearing. However, the youth of complainant (age 13 at trial), and that she was testifying about an extremely personal topic, were obvious justifications. Additionally, at the pretrial hearing, plaintiff informed the trial court that, before the case was bound over to the circuit court, defendant's family had contacted complainant in person and threatened her, including a mention of weapons. Further, at the first attempt at jury selection, the venire had to be dismissed after defendant's father created a disturbance that included making threats, disparaging the police and the prosecutor, and stating that complainant had been sexually active while defendant was a virgin. Thus, the safety of complainant, along with others involved in the proceedings, was an issue in view.

Defendant argues that defense counsel should not have agreed to the closure because there was no strategic reason to relieve the trial court of having to make that decision. However, the defense had an incentive to ensure that there would be no outburst consistent with what had previously occurred, which might reflect poorly on defendant or generate sympathy for complainant in the eyes of the jury. Defendant additionally argues that the trial court may have placed an undue importance on, or even credited the truthfulness of, complainant's testimony by clearing the courtroom. However, defendant acknowledges that the testimony of the complaining witness was crucial, which should have been obvious to the jury. And the suggestion of a connection between clearing the courtroom and crediting that witness's truthfulness seems speculative at best.

For these reasons, defendant has not demonstrated that it was below a level of professional reasonableness for his trial counsel to agree to close his trial in part.

## B. SUPPORT PERSON

Defendant also argues that his trial counsel provided ineffective assistance by stipulating that complainant could have a support person near her as she testified. MCL 600.2163a(4) requires a trial court to permit a "witness who is called upon to testify," and is under 16 years old, developmentally disabled, or a vulnerable adult, to "have a support person sit with, accompany, or be in close proximity to the witness during his or her testimony." Further, trial courts have broad general authority and discretion "to control their courtrooms," including "the mode and order by which witnesses are interrogated." *People v Johnson*, 315 Mich App 163, 177; 889 NW2d 513 (2016) (quotation marks and citations omitted).

Defendant argues that, because the presence of a support person might have caused the jury to sympathize with complainant and view defendant negatively, there was no strategic reason for relieving the trial court of having to decide whether complainant was entitled to a support person. However, defendant does not identify any basis for disallowing a support person for a witness, such as complainant, who was eligible for one under MCL 600.2163a(4). It was not ineffective assistance for counsel to agree to the application of a mandatory statutory provision when there

was no apparent basis to oppose it. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

Defendant further argues that his trial counsel should have requested jury instructions regarding clearing the courtroom and providing a support person for complaint. We conclude, however, that the court's general instructions to reach a verdict solely on the basis of the evidence well protected defendant's rights. Further, it also might have been a matter of sound trial strategy to eschew any such special instructions in order to avoid emphasizing complainant's need for such special accommodations. See *People v Rice*, 235 Mich App 429, 444-445; 597 NW2d 843 (1999).

### C. NURSE'S REPORT

Defendant argues that defense counsel provided ineffective assistance by not objecting to the admission of statements in the report of the sexual assault nurse examiner (SANE) report. Gail Lippert, the Director of the Sexual Assault Nurse Program, testified in that regard because the nurse who actually examined complainant had left the program. Defendant stipulated to the admission of the report as a record kept in the ordinary course of business at the facility. See MRE 803(6). At trial, Lippert reviewed the report of complainant's examination, and read the statement complainant offered to the SANE nurse to the jury. Lippert testified that complainant reported to the nurse that defendant was aggressive in holding her hand, grasping her breast, forcing her hand to masturbate his penis, and penetrating her vagina with her fingers until she refused his request for intercourse. Lippert further reported that the physical examination revealed no injury to complainant.

Defendant argues that it was deficient performance for defense counsel not to object to Lippert's testimony about the report on the ground that it was testimonial hearsay in violation of his right to confront adverse witnesses. See US Const, Am VI; Const 1963, art 1, § 20. In *Crawford v Washington*, 541 US 36, 68; 124 S Ct 1354; 158 L Ed 2d 177 (2004), the United States Supreme Court held that the Confrontation Clause prohibits the admission of testimonial hearsay against a criminal defendant unless the declarant was unavailable and the defendant had a prior opportunity to cross-examine the declarant. See also *Jordan*, 275 Mich App at 662. Testimonial hearsay includes pretrial statements if the declarant could reasonably expect that the statement would be used "in a prosecutorial manner," see *People v Lonsby*, 268 Mich App 375, 377; 707 NW2d 610 (2005), or if the statement was made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," *People v Jambor*, 273 Mich App 477, 486-487; 729 NW2d 569 (2007) (quotation marks and citation omitted).

Defendant argues that defense counsel should have objected to Lippert's testimony on the ground that it denied defendant his right to confront the author of the ostensibly testimonial statements. However, we conclude that complainant, and not the nurse examiner, was the declarant behind the challenged statements. And we need not decide whether complainant's statements to her examiner as recorded in the SANE report were testimonial in nature, because complainant testified and was subject to cross-examination. See *Crawford*, 541 US at 59 n 9 ("when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of [that declarant's] prior testimonial statements"). Accordingly, there can be no

Confrontation Clause issue regarding any excepted hearsay in connection with statements attributed to complainant, and thus defense counsel was not ineffective for declining to raise such an objection. See *Ericksen*, 288 Mich App at 201.

Defendant also argues that defense counsel should have objected on confrontation grounds to Lippert's testimony concerning the results of the physical examination of complainant as recorded in the SANE report. However, defense counsel had an obvious strategic reason for suppressing any such objection, in that it allowed for the admission of evidence that was favorable to defendant. Had defense counsel successfully objected, the evidence that a physical examination of complainant turned up nothing remarkable, and thus that no physical evidence supported complainant's statements, would not have come to the jury's attention. Declining to raise objections can be consistent with the presumption of sound trial strategy. *Unger (On Remand)*, 278 Mich App at 242. And a reviewing court should not second-guess such strategic decisions with the benefit of hindsight. *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004).

For these reasons, defendant has not brought any deficiency in defense counsel's performance to light. Therefore, defendant's argument of cumulative error also fails. See *People v Hill*, 257 Mich App 126, 152; 667 NW2d 78 (2003).

## II. SENTENCING

A conviction of first-degree criminal sexual conduct is normally punishable by imprisonment for life or any term of years. MCL 750.520b(2)(a). However, when the defendant is over the age of 17 and the victim is under the age of 13, as in this case, the sentence is "imprisonment for life or for any term of years, but not less than 25 years." MCL 750.520b(2)(b). In this case, the trial court sentenced defendant to 15 to 40 years in prison, thus imposing a minimum below the statutory requirement. Plaintiff argues on cross-appeal that the trial court erred in this regard.

Defendant argued below, and argues on appeal, that application of the mandatory minimum in his case would be disproportionate, and in violation of the prohibition of "cruel and unusual" punishment in the Eighth Amendment of the United States Constitution. The Michigan Constitution similarly prohibits "cruel or unusual" punishment. Const 1963, art 1, § 16.

The trial court justified its departure from the statutory minimum by noting how much longer that 25-year minimum was than the guidelines recommendation of 27 to 45 months, that defendant had just turned 18 years old at the time of the crime, had no history of sex crimes or other criminality, and that his crime did not involve a weapon or coercion. The trial court opined that the factors of youth described in *Miller v Alabama*, 567 US 460, 470-473; 132 S Ct 2455; 183 L Ed 2d 407 (2012), "would necessarily apply to the defendant in this case," and stated that defendant had lived an unremarkable life, graduated high school, and had aspirations. The trial court concluded:

> None of . . . these circumstances are taken into account in the guidelines nor can they be with the statutorily required minimum sentence of 25 years. The court believes its mandatory sentence in this case unnecessarily limits judicial discretion, prohibits the court for fashioning a sentence to fit the offender and the

circumstances of the case. For all these reasons, the court finds the 25-year mandatory sentence to be disproportionate.

While there is no precise mathematical calculation that can be utilized, the sentence to be imposed . . . this court believes . . . takes into account the age of the victim, the seriousness of the offense, and will assure protection of society and act as a deterrent to further behavior of this type by the defendant.

However, proportionality in the context of a legislatively mandated sentence "concerns whether the punishment concededly chosen or authorized by the Legislature is so grossly disproportionate as to be unconstitutionally 'cruel or unusual,' " and the discussion of general principles of proportionality in *People v Milbourn*, 435 Mich 630, 650; 461 NW2d 1 (1990), overruled by statute as recognized in *People v Armisted*, 295 Mich App 32, 51; 811 NW2d (2011), adopted in *People v Steanhouse*, 500 Mich 453, 471-472; 902 NW2d 327 (2017), "has no applicability to a legislatively mandated sentence because the trial court, in that case, lacks any discretion to abuse." *People v Bullock*, 440 Mich 15, 34 n 17; 485 NW2d 866 (1992).[1] "Because the Legislature subscribed to the principle of proportionality in developing the sentencing scheme," a legislatively mandated sentence is presumed to be proportionate and valid. *People v Williams*, 189 Mich App 400, 404; 473 NW2d 727 (1991). Accordingly, the trial court erred to the extent that it based its sentence, and its rejection of the legislatively mandated 25-year minimum sentence, on general principles of proportionality. Additionally, the trial court erred to the extent that it believed that *Miller* applied to this case, because *Miller* concerned the sentencing of a juvenile, rather than an adult, as is the case here. See *Miller*, 567 US at 470-474.

Further, as defendant acknowledges, this Court has considered and rejected his constitutional argument relating to cruel and unusual punishment. *People v Benton*, 294 Mich App 191, 203-207; 817 NW2d 599 (2011), citing MCL 750.520b(2)(b). The defendant in *Benton* emphasized that the offenses at issue "did not involve any force, violence, coercion, or trickery, and that the victim did not sustain physical or psychological injury," and that the defendant had "no prior criminal record of any kind . . . and she had otherwise led an exemplary life." *Benton*, 294 Mich App at 205 (quotation marks omitted). The defendant argued, therefore, that "her sentences are unduly harsh in view of the particular offense, which she characterizes as a comparatively benign type of child assault." *Id*. This Court evaluated the pertinent factors and stated, "we reject defendant's argument that her mandatory 25-year minimum sentences are unconstitutionally cruel or unusual." *Id*. at 207.

"In deciding if punishment is cruel or unusual, this Court looks to the gravity of the offense and the harshness of the penalty, comparing the punishment to the penalty imposed for other crimes in this state, as well as the penalty imposed for the same crime in other states." *People v Brown*, 294 Mich App 377, 390; 811 NW2d 531 (2011). In *Benton*, 294 Mich App at 205-205, this Court

---

[1] The reasonableness of a sentence is determined by evaluating whether the sentence violates the principle of proportionality, " 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Steanhouse*, 500 Mich at 474, quoting *Milbourn*, 435 Mich at 636.

determined that the severity of the 25-year mandatory minimum sentence imposed was not disproportionate to the gravity of an adult committing a sexual crime against a child less than 13 years old, even considering the defense argument that the behavior underlying the conviction was not particularly egregious in the context of sexual abuse. This Court reasoned that the Legislature was furthering Michigan's public policy of protecting children from sexual exploitation, and stated that "the Legislature did not intend to withdraw the law's protection of the victim in order to protect the offender." *Id*. at 205 (quotation marks and citation omitted). This Court also concluded that the mandatory sentence was not disproportionately harsh compared to sentences for other violent offenses in Michigan. *Id*. at 206. The Court reasoned that "sexual activity by an adult with a preteen victim is an offense that violates deeply ingrained social values of protecting children from sexual exploitation," and that "sexual abuse of children causes substantial long-term psychological effects, with implications of far-reaching social consequences." *Id*. This Court concluded that "[t]he unique ramifications of sexual offenses against a child preclude a purely qualitative comparison of sentences for other offenses to assess whether the mandatory 25-year minimum sentence is unduly harsh." *Id*. Also, this Court noted that at least 18 other states imposed the same sentence for the same crime. *Id*. at 206-207 & n 1.

Defendant argues that *Benton* is distinguishable from the instant circumstances because *Benton* involved an older defendant who had a trusting relationship with the victim. However, defendant was in fact legally an adult at the relevant time, even if a young one, and he also had a trusting relationship with complainant as a close family friend. This Court has examined the constitutionality of the challenged mandatory minimum sentence in broad terms as discussed above, and determined that it is not unconstitutionally cruel and unusual punishment. This Court is bound to follow this Court's decision in *Benton*, as was the trial court.[2] Thus, the trial court erred by failing to apply the unambiguous language of MCR 750.227b(2)(b), and resentencing in conformity with that statute is thus is required.

Conviction affirmed, but remanded for resentencing. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Kathleen Jansen
/s/ Colleen A. O'Brien

---

[2] See MCR 7.215(C)(2) ("A published opinion of the Court of Appeals has precedential effect under the rule of stare decisis."); MCR 7.215(J)(1) (this Court must follow its published decisions issued on or after November 1, 1990, except decisions that have been reversed or otherwise modified by the Supreme Court or a special panel of this Court).