PEOPLE v KLINE

Docket No. 126352. Submitted July 14, 1992, at Detroit. Decided August 21, 1992; approved for publication November 23, 1992, at 9:05 A.M.

Louis Kline was convicted of third-degree criminal sexual conduct following a bench trial in the Detroit Recorder's Court, Denise Page Hood, J. Pursuant to the prosecutor's motion, and over the defendant's objection, the trial was closed to the public during the complainant's testimony. The defendant appealed.

The Court of Appeals *held:*

1. There was sufficient evidence to support the conviction. The prosecutor presented evidence from which a rational trier of fact could have concluded that the defendant compelled the complainant by force or coercion to participate in sexual intercourse.

2. The introduction at trial of evidence of the complainant's diminished mental capacity did not alter the charge against the defendant from one based on force or coercion to one based on incapacity of the complainant. The evidence was relevant to the complainant's susceptibility to, and ability to repel, force or coercion.

3. A criminal defendant's right under US Const, Am VI and Const 1963, art 1, § 20 to a public trial is not absolute. Partial closure may be granted where the party seeking closure advances a substantial interest that is likely to be prejudiced by an open trial, the closure is no broader than necessary to protect that interest, and the trial court considers reasonable alternatives to closing the proceeding and states on the record its findings in support of closure. In this case, the trial court failed to state on the record its findings in support of closure, necessitating remand.

Remanded for further proceedings.

J. C. KINGSLEY, J., dissenting in part, stated that remand is unnecessary because the record sufficiently indicates the trial court's reasons for closure.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecut-

ing Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Maria A. Petito,* Assistant Prosecuting Attorney, for the people.

*Mark H. Magidson,* for the defendant on appeal.

Before: FITZGERALD, P.J., and HOOD and J. C. KINGSLEY,* JJ.

PER CURIAM. Following a bench trial, defendant Louis Kline was convicted of third-degree criminal sexual conduct, MCL 750.520d(1)(b); MSA 28.788(4) (1)(b), and was sentenced to a prison term of five to fifteen years. Defendant appeals as of right.

Defendant first argues that the prosecutor failed to present sufficient evidence to prove that he used force or coercion to compel the complainant to submit to sexual intercourse. We disagree.

When considering the sufficiency of the evidence at a bench trial, this Court views the evidence in a light most favorable to the prosecution and determines whether a rational trier of fact could find that the elements of the crime were proven beyond a reasonable doubt. *People v Vaughn,* 186 Mich App 376, 379; 465 NW2d 365 (1990).

For purposes of the statutory section under which defendant was charged, force or coercion means that "the defendant either used physical force or did something to make [the complainant] reasonably afraid of present or future danger."[1] CJI2d 20.15.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Force or coercion includes but is not limited to any of the circumstances listed in MCL 750.520b(1)(f)(i)-(v); MSA 28.788(2)(1)(f)(i)-(v), which provide as follows:

(i) When the actor overcomes the victim through the actual application of physical force or physical violence.
(ii) When the actor coerces the victim to submit by threaten-

In this case, the sixteen-year-old complainant testified that she believed she was being forced by her stepfather to remove her panties, although she did not believe that she was being threatened. Defendant grabbed her breasts while repeatedly telling her to remove her panties and to not tell her mother what happened. Each time the complainant told defendant to stop, defendant failed to comply. One of the instances of penetration occurred in a basement where, arguably, the complainant was isolated from help. Under these circumstances, and viewing the evidence in a light most favorable to the prosecution, the evidence was sufficient for a rational trier of fact to find that defendant compelled the complainant by force or coercion to participate in sexual intercourse. See *People v McGill,* 131 Mich App 465; 346 NW2d 572 (1984) (the defendant was convicted of fourth-degree criminal sexual conduct, which contains the same "force or coercion" element as third-degree criminal sexual conduct, where the complainant objected and the defendant was older and stronger than the complainant).

Defendant next asserts that introduction of evidence regarding the complainant's mental capacity changed the charge against him at trial because

ing to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats.

(iii) When the actor coerces the victim to submit by threatening to retaliate in the future against the victim, or any other person, and the victim believes that the actor has the ability to execute this threat. As used in this subdivision, "to retaliate" includes threats of physical punishment, kidnapping, or extortion.

(iv) When the actor engages in the medical treatment or examination of the victim in a manner or for purposes which are medically recognized as unethical or unacceptable.

(v) When the actor, through concealment or by the element of surprise, is able to overcome the victim.

he was charged under the "force and coercion" subsection of the statute, and not the "incapacity of the complainant" subsection. We disagree. The information adequately put defendant on notice of the charge against him. *People v Roupe,* 150 Mich App 469, 476; 389 NW2d 449 (1986). The fact that the prosecution presented testimony regarding the complainant's mental capacity did not change the crime of which defendant was charged and ultimately convicted. The evidence was relevant to show that complainant may have had a somewhat diminished capacity to consent and to show that such diminished capacity may have made her more susceptible to defendant's coercion. Consequently, the complainant's mental capacity was a part of the totality of the circumstances surrounding the issue whether defendant compelled the complainant to participate in sexual intercourse by the use of force or coercion.

Defendant also argues in relation to the complainant's mental capacity that her mother was erroneously allowed to testify regarding the complainant's mental condition. Complainant's mother testified that complainant had a "condition" since birth, that she was "slow," and that she was enrolled in special education classes at school. She did not opine whether complainant's diminished mental capacity would render the complainant incapable or even less capable of withstanding defendant's advances. Further, a review of the court's findings of fact reveals that it gave little weight to testimony regarding the complainant's mental capacity in finding that defendant used force or coercion to compel complainant to participate in sexual intercourse.

Lastly, defendant argues that his Sixth Amendment right to a public trial was violated when the trial court, over defendant's objection, closed the

courtroom to the public during the complainant's testimony.

The Sixth Amendment guarantees every criminal defendant a "speedy and public trial." US Const, Am VI; Const 1963, art 1, § 20. Although the right to an open trial is not absolute, that right will only rarely give way to other interests. *Waller v Georgia*, 467 US 39; 104 S Ct 2210; 81 L Ed 2d 31 (1984). In *Waller*, the Court, quoting *Press Enterprise Co v Superior Court of Cal, Riverside Co*, 464 US 501, 510; 104 S Ct 819; 78 L Ed 2d 629 (1984), emphasized the need for specific findings to help determine whether an order of closure is proper:

> The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered. [467 US 45.]

See also *Richmond Newspapers, Inc v Virginia*, 448 US 555, 581; 100 S Ct 2814; 65 L Ed 2d 973 (1980) (absent an overriding interest articulated in findings, the trial of a criminal case must be open to the public).

The requirements for the total closure of a trial were set forth by the Supreme Court in *Waller:* (1) The party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, (2) the closure must be no broader than necessary to protect that interest, (3) the trial court must consider reasonable alternatives to closing the proceeding, and (4) it must make findings adequate to support the closure. *Id.,* 48, quoting *Press-Enterprise Co, supra.*

*Waller* addressed total closure of a suppression hearing, and does not necessarily govern partial

closures.[2] See, e.g., *United States v Sherlock,* 865 F2d 1069, 1076 (CA 9, 1989), *Jones v Henderson,* 809 F2d 946, 951 (CA 2, 1987). Because the effect of a partial closure does not reach the level of total closure, only a substantial, rather than a compelling, reason for the closure is necessary. *Sherlock, supra,* 1077; *Nieto v Sullivan,* 879 F2d 743, 753 (CA 10, 1989); *Douglas v Wainwright,* 714 F2d 1532, 1544 (CA 11, 1983).

In this case, the prosecutor requested closure during the complainant's testimony because of the nature of the testimony, the age and mental disability of the complainant, and the fact that complainant lived in a trauma center after the incident. Following the prosecutor's motion, a discussion was held off the record. Immediately thereafter, the trial court stated:

> Relative to the motion to close the courtroom, it's my understanding that the only people that are here are members of the complainant's family and then some other case that I have here which is just a couple of people waiting to receive forms, and that there aren't any other public spectators on either side.
>
> \* \* \*
>
> I am going to, during the testimony of the complainant, allow the courtroom to be cleared.
>
> I don't—it may not require clearing of anybody because I think there are only two people waiting here for matters, one waiting for paperwork and the other one is waiting for an attorney to appear.
>
> So to that extent, the motion is granted although I don't—I am not sure at this point it's going to involve anybody.

[2] A partial closure occurs where the public is only partially excluded, such as when family members or the press are allowed to remain, *Douglas v Wainwright,* 714 F2d 1532, 1539 (CA 11, 1983), or when the closure order is narrowly tailored to specific needs. *Davis v Reynolds,* 890 F2d 1105, 1109 (CA 10, 1989).

In this case, the trial court permitted the complainant's family to remain in the courtroom during her testimony. The court noted that no persons were there for defendant and, therefore, did not make findings regarding such persons. Because complainant's family was permitted to remain, we may presume that defendant's family and friends would also have been permitted to remain. Thus, we conclude that the closure in this case constituted a partial closure.[3]

Next, we must determine, in light of defendant's right to a public trial, whether the trial court had a substantial reason for the partial closure. We must also decide whether the closure was narrowly tailored to exclude spectators only to the extent necessary to satisfy the purpose for which it was ordered. *Sherlock, supra,* 1077.

The government may have a substantial or compelling interest in protecting young witnesses who are called to testify in cases involving allegations of sexual abuse. *Globe Newspaper Co v Superior Court for Norfolk Co,* 457 US 596, 607; 102 S Ct 2613; 73 L Ed 2d 248 (1982); *Davis v Reynolds,* 890 F2d 1105, 1109 (CA 10, 1989). The age of an alleged victim, the nature of an alleged offense, and the potential for harm to the victim are appropriate factors to consider in weighing an accused's right to a public trial against the government's interest in protecting a victim from undue harm. *Davis, supra,* 1110. The court must consider these factors and any others with reference to the specific facts of each case, and must outline those facts that make closure necessary.

In this case, the court undoubtedly considered these factors, as well as complainant's mental

---

[3] Although we are not confronted with the factual situation, we do not condone the removal of family members from the courtroom in the absence of compelling reasons.

capacity and subsequent treatment at the trauma center, in deciding to partially close the courtroom. However, the court failed to make findings on the record in support of its order as required by the United States Supreme Court. Although we recognize that a defendant is not required to show prejudice to obtain relief for a violation of the right to a public trial,[4] *United States v Galloway,* 937 F2d 542, 546 (CA 10, 1991), we do not think that the failure to make findings at the time of the partial closure requires reversal. In these circumstances, where the closure order appears to be narrowly drawn, we do not think that failure to state the findings on the record in and of itself, requires a new trial. The lack of findings prevents us from determining whether the defendant's right to a public trial was outweighed by the interest asserted by the government in protecting the complaining witness. To grant defendant a new trial under these circumstances without making that determination would not be in the public interest. Cf. *Waller, supra* (failure to hold suppression hearing in public did not require granting the defendant a new trial).

In this instance the appropriate course is to remand the case to the trial court with directions to supplement the record with the facts and reasoning upon which the partial closure of the courtroom was based. Remanding the case to the trial court will fully protect defendant's rights. Insofar

[4] The prosecutor relies on *People v Bails,* 163 Mich App 209; 413 NW2d 709 (1987), where the Court held that a harmless-error analysis applies when a defendant claims that his right to a public trial was violated. *Bails* is factually distinguishable. In *Bails,* the defendant did not object to the court's order to lock the courtroom to prevent people from moving in and out because the increased traffic would have been distracting to the jury, and the order did not exclude anyone who wished to observe. Nonetheless, we disagree with the conclusion in *Bails* that a harmless-error analysis is applicable when a defendant claims that his right to a public trial was violated.

as the court failed to make adequate findings on the record, the deficiency can be remedied by the trial court upon remand. This procedure will provide us with a basis for determining whether the partial closure of the courtroom was justified under the circumstances. This Court will retain jurisdiction of the case so that after the record is supplemented we can determine whether the particular interests asserted to justify the partial closure were sufficient to outweigh defendant's right to a public trial.

Remanded for further fact finding. We retain jurisdiction.

J. C. KINGSLEY, J. *(dissenting in part).* I respectfully dissent from the majority's decision to remand the matter to the trial court "to supplement the record with the facts and reasoning upon which the partial closure of the courtroom was based." I believe the statements the trial court made at the time were a sufficient explanation of the reasons for ordering the partial closure.