# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
September 22, 2015

v

KENNETH MICQUEL SCOTT,

Defendant-Appellant.

No.  320321
Wayne Circuit Court
LC No.  13-007495-FC

Before:  MURRAY, P.J., and METER and OWENS, JJ.

PER CURIAM.

Defendant appeals as of right from his convictions by a jury of felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felon-firearm), MCL 750.227b.[1]  The court sentenced defendant as a second-offense habitual offender, MCL 769.10, to consecutive prison terms of two years for felony-firearm and two to seven and one-half years for felon in possession, with those terms to run consecutively to an earlier prison sentence for which defendant was on parole at the time he committed the instant offenses.  We affirm.

The complainant testified that he is a marijuana dealer and on the day in issue, defendant arrived at his home to purchase marijuana.  The complainant testified that the two went into the basement and smoked marijuana.  Defendant then became sick, the complainant testified, and went into the bathroom.  According to the complainant, when defendant returned he shot the complainant in the head.  The complainant then went into the bathroom and, when he returned, shot at defendant.

A police officer, Khary Mason, testified that defendant admitted shooting the complainant in the head while the complainant was sitting on a couch.  According to Mason, defendant stated that the complainant then went into the bathroom, came out, and began shooting at defendant.  Defendant wrote and signed a letter, admitted into evidence, in which he

---

[1] Defendant was acquitted of additional charges of armed robbery, MCL 750.529, assault with intent to commit murder, MCL 750.83, and assault with intent to do great bodily harm less than murder, MCL 750.84.

-1-

apologized to the complainant and stated that he was "truly sorry and upset with [himself] for what [he] did" and that he was glad the complainant was alive. At trial, defendant admitted shooting at the complainant but claimed that the complainant shot at him first.

Defendant first argues that he was entitled to a new trial because the trial court closed the courtroom to the public during the first day of jury voir dire. During the second day of trial, and during continued voir dire, defense counsel took issue with the fact that some members of defendant's family had been excluded from the courtroom during the prior day and requested a mistrial. Defense counsel explained to the court that while he had become aware at some point during the prior day that defendant's family members were not in the courtroom, he was not aware "before it began" that the family members had been asked to step outside the courtroom. Counsel stated that he did not immediately bring the matter to the court's attention because he was not then aware whether jury selection "was covered under the right to a public trial," but that he had learned on the way home that it was a structural error. Defendant's family members were allowed to be in the courtroom on the second day of trial, including for the remainder of jury selection. The court denied the motion for a mistrial.

While we conclude that the trial court erred in its decision to close the courtroom, we find that, under these particular circumstances, defendant cannot show that any further relief is warranted.

As discussed in *People v Vaughn*, 491 Mich 642, 650-651; 821 NW2d 288 (2012), the Sixth Amendment right to a public trial also encompasses the right to public voir dire. Therefore, the trial court's ability to close the courtroom during voir dire is limited:

> [T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure. [*Waller v Georgia*, 467 US 39, 48; 104 S Ct 2210; 81 L Ed 2d 31 (1984); see also *Presley v Georgia*, 558 US 209, 213-214; 130 S Ct 721; 175 L Ed 2d 675 (2010).]

*Vaughn* recognized that a violation of the right to a public trial is a "structural error." *Vaughn*, 491 Mich at 666-667. The *Vaughn* Court noted that normally structural errors are "'are intrinsically harmful, without regard to their effect on the outcome. . . .'" *Id.*, quoting *People v Duncan*, 462 Mich 47, 51; 610 NW2d 551 (2000). The Court also found that "if there is a timely assertion of the Sixth Amendment public trial right, the remedy for a violation must be "'appropriate to the violation,'" although "'the defendant should not be required to prove specific prejudice in order to obtain relief. . . .'" *Vaughn*, 491 Mich at 653, quoting *Waller*, 467 US at 49-50.

*Vaughn* also explained that despite its structural basis, the right to a public trial can be forfeited by a defendant, as can most claims of constitutional error. *Vaughn*, 491 Mich at 663-664. In such cases:

> the failure to assert a constitutional right ordinarily constitutes a forfeiture of that right.[37] In analyzing a forfeited claim of error, a defendant is not entitled to relief

unless he can establish (1) that the error occurred, (2) that the error was "plain," (3) that the error affected substantial rights, and (4) that the error either resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings. [*Id.* at 654.]

---

[37] [*United States v*] *Olano*, 507 US [725, 733; 113 S Ct 1770; 123 L Ed 2d 508 (1993)] ("[F]orfeiture is the failure to make the timely assertion of a right . . . .")

The courtroom should not have been closed during voir dire. The stated reason for the closure was the trial court's policy of closing the courtroom due to seating capacity. In discussing the related right of the public to attend court proceedings, the Michigan Supreme Court has observed that the size of the courtroom may justifiably limit attendance. *Detroit Free Press v Recorder's Court Judge*, 409 Mich 364, 386-387; 294 NW2d 827 (1980). "However, even where the reason offered is space limitations, the court must still narrowly tailor the closure order." *In re Closure of Jury Voir Dire*, 204 Mich App 592, 595; 516 NW2d 514 (1994). Here, the trial court did not narrowly tailor its order; it totally closed the courtroom. Such a procedure requires an overriding reason, as opposed to a partial closure, which requires only a substantial one. See *People v Kline*, 197 Mich App 165, 169; 494 NW2d 756 (1992).

In *In re Closure of Jury Voir Dire*, this Court found that a total closure during voir dire due to a lack of space was not "narrowly tailored" to solve the problem:

The concern over lack of space did not necessarily mandate closing the entire proceeding to all members of the press. Because there were not enough permanent seats in the courtroom, the court brought in twenty additional chairs to accommodate the prospective jurors. It seems that space for a limited number of journalists, or at least one, could also have been found. The court's concern regarding the reporters mingling with the prospective jurors could have been addressed by an order requiring the reporters to be segregated from the prospective jurors or by informing the prospective jurors about the presence of the journalists and warning both prospective jurors and journalists not to talk about the case. Further, the court gave no reason why every member of the jury pool had to be in the courtroom at one time. The court apparently did not even consider keeping some of the prospective jurors in jury rooms or other parts of the courthouse until it was determined that they were needed in the courtroom. [*In re Closure of Jury Voir Dire*, 204 Mich App at 595-596.]

The circumstances in the instant case are analogous. The court could have kept part of the jury pool in other rooms, e.g., the jury deliberation room. Further, there was testimony that most of the row reserved for police officers and attorneys had been empty. The trial court should have allowed defendant's family members or other members of the public to occupy those seats, and if the court was concerned about any interaction between the jurors seated in the row and members of the public, the court could have instituted protections against such contact.

However, defendant is not entitled to a reversal of his convictions under the particular circumstances of the instant case. Defendant did not raise the issue until the second day of trial,

and the members of defendant's family were able to watch the trial during a portion of the voir dire proceedings on the second day, which was the day testimony began. As the *Vaughn* Court discussed, the members of the jury venire were members of the public, which "guarantees that the *voir dire* proceedings will be subject to a substantial degree of continued public review." *Vaughn*, 491 Mich at 668 (internal quotation marks and citation omitted). Defense counsel expressed satisfaction with the jury selected. See *id*. at 668. There was appropriate questioning of jurors during the first day, and as in *Vaughn*, the closure did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Id*. at 668-669. Further, there is no indication that defendant was actually innocent. See *id*. at 654. We find no basis for reversal.

Defendant also argues that the trial court impermissibly engaged in judicial fact-finding during sentencing under *Alleyne v United States*, ___ US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013). Recently, the Michigan Supreme Court concluded that our prior sentencing scheme violated the Sixth Amendment because it allowed a sentencing judge to engage in judicial fact-finding when deciding how to score a particular sentencing variable, which is used in turn to mandatorily increase the floor of the guidelines minimum sentence range. *People v Lockridge*, ____ Mich ___; ___ NW2d ___ (2015) (Docket No. 149073); slip op at 1-2, 11-12, 16, 36. As a result, when the guidelines scoring involves fact-finding other than facts admitted to by a defendant or found beyond a reasonable doubt by a jury, the imposition of a sentence within the guidelines is no longer mandatory under MCL 769.34(2). *Lockridge*, ___ Mich at ___; slip op at 2, 28. In these cases, the guidelines are still to be scored, but are advisory only. *Id*. at ___; slip op at 28-29. However, if it is evident from the record that there was no judicial fact-finding that increased the applicable cell in the sentencing grid, and thus the defendant's guidelines minimum sentence range, then there is no constitutional violation. *Id*. at ___; slip op at 32.

Defendant takes issue with the scoring of offense variables (OVs) 1 and 3.[2] The trial court scored 25 points for OV 1 and 10 points for OV 3. Twenty-five points are to be scored for OV 1 when "[a] firearm was discharged at or toward a human being or a victim was cut or stabbed with a knife or other cutting or stabbing weapon[.]" MCL 777.31(1)(a). Ten points are to be scored for OV 3 points when "[b]odily injury requiring medical treatment occurred to a victim[.]" MCL 777.33(1)(d).

Both of these facts were admitted to by defendant during trial. Defendant freely admitted that he shot at the victim. He also testified that "once the detective told me that I actually did hit him I felt bad about it." Defendant admitted that the detective told him where the victim had been hit and defendant admitted that he "knew [the victim] could have died . . . ." Defendant is not entitled to resentencing because no improper judicial fact-finding occurred.

Defendant further argues that because the scoring of offense variables is, unless otherwise stated, offense-specific, these OVs should have been scored at zero points because they relate to the assault and robbery offenses for which defendant was acquitted. Defendant is correct that, as a general rule, the scoring of offense variables is "offense specific" and should be

---

[2] We note that defendant did not raise an argument about the prior record variables either below or on appeal.

made "on the basis of the sentencing offense." *People v Sargent*, 481 Mich 346, 348; 750 NW2d 161 (2008). However, possession is a continuing offense, which lasted here as long as defendant still retained control of his weapon. See *People v Burgenmeyer*, 461 Mich 431, 436-440; 606 NW2d 645 (2000) ("possession" for purposes of a possessory firearm offense occurs while the defendant has proximity and reasonable accessibility to the weapon), and *People v Owen*, 251 Mich App 76, 82-83; 649 NW2d 777 (2002) ("[the] defendant's concealing or storing a stolen firearm . . . was a continuing offense as long as [the concealment or storage] existed") (internal quotation marks and citation omitted). Defendant shot the complainant while he illegally possessed the firearm. Defendant is not entitled to relief.

Affirmed.

/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Donald S. Owens