*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ADAM MANLEY DUNN,

        Defendant-Appellant.

UNPUBLISHED
April 09, 2026
2:42 PM

No. 371955
Wayne Circuit Court
LC No. 24-001116-01-FC

Before: KOROBKIN, P.J., and YOUNG and BAZZI, JJ.

PER CURIAM.

Defendant, Adam Manley Dunn, appeals as of right his bench trial convictions of one count of armed robbery, MCL 750.529; one count of assault with the intent to do great bodily harm less than murder (AWIGBH), MCL 750.84(1)(a); one count of being a felon in possession of a firearm (felon-in-possession), MCL 750.224f; and three counts of carrying a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b(1). Dunn was sentenced to concurrent terms of 25 to 50 years' incarceration for the armed robbery conviction, 5 to 10 years' incarceration for the AWIGBH conviction, and three to five years' incarceration for the felon-in-possession conviction. He was further sentenced to five years' incarceration for each felony-firearm conviction, to be served concurrently with each other but consecutive to his other sentences. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises out of the January 2024 robbery and shooting of complainant, Michael Jackson, on the driveway of his home in Detroit, Michigan. At approximately 1:00 p.m., Jackson was driving his vehicle with his girlfriend in the vicinity of residence, when he noticed a black Ford Escape appeared to be following him as he traveled between multiple locations. Jackson and his girlfriend then returned to his home. Shortly after Jackson parked his car in the driveway of his home, he noticed the same black Ford Escape pull over on his street and stop by his driveway. One person got out of the Ford Escape, whom Jackson recognized as Dunn; the two had known each other since they were children. Dunn approached and the two exchanged pleasantries. As Jackson was speaking to Dunn, he noticed a masked individual get out of the black Ford Escape,

-1-

who then walked up to join the conversation. Jackson testified that he was familiar with the masked individual and recognized his tattoos, complexion, and voice. Jackson recalled that while he was not threatened by either party, he felt uneasy about the fact that this person was wearing a mask. Dunn and the masked individual stood side by side as they continued to converse with Jackson. Jackson was wearing a pair of Cartier glasses and a Rolex watch, both of which were in plain view. Jackson further carried two weapons on his person, including a Draco pistol that he was holding in his hand and a "FN Five seven by twenty eight" pistol[1] that was visibly tucked into his waistband. Dunn and Jackson shook hands, and the conversation seemingly concluded.

After bidding the men farewell, Jackson was shot. Jackson testified that while he did not see any weapons, he heard and felt approximately three gunshots, and he could see that the shots came from Dunn's direction. Dunn had his hand in his coat at the time. After Jackson was shot, he was tackled by Dunn, which caused Jackson to slip and fall to the ground. As Jackson was on the ground, Dunn reached inside Jackson's clothing and forcibly retrieved Jackson's FN Five-seveN pistol off his person. As Jackson wrestled with Dunn, Jackson heard another gunshot and asserted at trial that he was certain the additional shot did not come from the firearm inside of his sweatshirt. The masked individual was allegedly instructing Dunn to get off of Jackson while the two were struggling for the FN Five-seveN pistol to allow the masked individual to shoot Jackson. Jackson further testified that the masked individual pointed Jackson's Draco pistol at him and said, "[Y]ou got five mother 'F'in seconds to take off that watch, or I'm gonna kill you're [sic] a**." Jackson lost possession of both his Draco pistol and Cartier glasses during the struggle. After Dunn and the masked individual acquired Jackson's Rolex, the two returned to the black Ford Escape and fled the scene. Jackson received treatment at a hospital for his wounds, which included a bullet wound on his bicep, two in his armpit, and one final wound from where a bullet exited out of his back. The security camera of Jackson's neighbor, Kevin Booker, captured the physical struggle between Jackson and Dunn, and the footage was submitted into evidence.

Following a bench trial, the trial court convicted Dunn as previously provided. Dunn was acquitted of an additional charge of assault with intent to murder, MCL 750.83, in addition to the corresponding felony-firearm charge. As the trial court announced its verdict, an unidentified speaker interrupted the proceedings. As the trial court attempted to continue reading its verdict, the speaker argued with a deputy and attempted to bring a matter to the court's attention. After a heated exchange with the deputy, the proceedings continued without further interruption. Dunn was sentenced as noted prior. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

On appeal, Dunn argues that the prosecution presented insufficient evidence to sustain his convictions. We disagree.

To effectively protect the right to due process in a criminal proceeding, prosecutors must provide evidence to support a criminal conviction beyond a reasonable doubt. *People v Nowack*, 462 Mich 392, 399; 614 NW2d 78 (2000). As opined by the Michigan Supreme Court:

---

[1] This type of pistol is commonly referred to as an "FN Five-SeveN."

> Bench trials stand in sharp contrast to jury trials. A jury is required to consider all the evidence and to render a unanimous verdict, without the need for explanation. In a bench trial, however, the trial court is obligated to find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment. The court must state its findings and conclusions on the record or in a written opinion made a part of the record. Because of this, reviewing courts are provided greater insight into the specific evidence found by the trial court to support verdicts in bench trials. [*People v Xun Wang*, 505 Mich 239, 250; 952 NW2d 334 (2020) (quotation marks and citation omitted).]

Challenges to the sufficiency of that evidence are reviewed de novo. *People v Kloostermann*, 296 Mich App 636, 639; 823 NW2d 134 (2012). In an appeal challenging the sufficiency of the evidence, this Court must review the evidence in the light most favorable to the prosecution to determine whether it was sufficient to permit the finder of fact to find the essential elements of a crime beyond a reasonable doubt. *People v Jarell*, 344 Mich App 464, 480; 1 NW3d 359 (2022). Furthermore, this Court "must defer to the fact-finder's role in determining the weight of the evidence and the credibility of the witnesses and must resolve conflicts in the evidence in favor of the prosecution." *People v Savage*, 327 Mich App 604, 614-615; 935 NW2d 69 (2019) (quotation marks and citation omitted).

"Findings of fact by the trial court may not be set aside unless they are clearly erroneous." *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Gingrich*, 307 Mich App 656, 661; 862 NW2d 432 (2014) (quotation marks and citation omitted).

## A. AWIGBH

Dunn contends that there was insufficient evidence to support his AWIGBH conviction because the prosecution failed to establish that Dunn possessed a weapon or caused Jackson's injuries. We disagree.

"The elements of assault with intent to do great bodily harm less than murder are: 1) an attempt or threat with force or violence to do corporal harm to another (an assault), and 2) an intent to do great bodily harm less than murder." *People v Brown*, 267 Mich App 141, 148; 703 NW2d 230 (2005) (quotation marks and citation omitted; emphasis omitted). AWIGBH is a specific intent crime. *Id*. at 146. Intent to do great bodily harm has been defined as "an intent to do serious injury of an aggravated nature." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016) (quotation marks and citation omitted). This Court has previously determined that intent may be inferred from circumstantial evidence. *People v Kenny*, 332 Mich App 394, 403; 956 NW2d 562 (2020). This circumstantial evidence may include "defendant's actions, including the use of a dangerous weapon or the making of threats." *People v Stevens*, 306 Mich App 620, 629; 858 NW2d 98 (2014). A defendant's intent may also be inferred from injuries suffered by the complainant. *Id*. A criminal assault is defined as (1) an attempt to commit a battery or (2) an unlawful act that places another in immediate, reasonable apprehension of a battery. *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005). The elements of battery have been defined as

"an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *Id*. (quotation marks and citations omitted).

In the present case, the trial court articulated its factual findings after reviewing the entirety of the record, including the admitted exhibits, the testimonies of Jackson, Booker, and Detroit Police Department Officer Ahmed Haidar, in addition to the video evidence depicting a portion of the underlying incident. The court resolved that Dunn was the person responsible for initially shooting Jackson, stating:

> Uh, the Court finds as a fact that, uh, Mr. Dunn shot and struck Mr. Jackson, uhm, at least two times, in the arm, and arm pit region, uh, of Mr. Jackson's body. Uhm, the Court notes that Mr. Jackson credibly testified that he believes Mr. Dunn, believed Mr. Dunn was the shooter, because, uh, he was shot in a line that was directly from Mr. Dunn, even though he didn't see, uh, the gun in Mr. Dunn's hand. Uh, but clearly, based on the fact that Mr. Jackson had two bullet wounds, at least two bullet wounds, in his arm and arm pit, uh, there is no question that Mr. Dunn, uhm, in fact, shot and struck Mr. Jackson.

As previously noted, Booker's security footage portrayed the physical struggle between Jackson and Dunn. In conjunction with Jackson's testimony, the cited footage depicted Jackson, on the ground, yelling, as Dunn was looming over Jackson attempting to remove Jackson's firearm. The footage further shows Dunn with a separate, unidentified firearm in his hand while Dunn was attempting to disarm Jackson of his FN Five-seveN pistol. Further, during the entire altercation, the sole firearm seen in the masked individual's possession was Jackson's Draco pistol. Due to the assault, Jackson suffered multiple gunshot wounds and was hospitalized, requiring a blood transfusion. Considering the nature and extent of Jackson's injuries, a reasonable fact-finder may infer the assault which caused such harm was committed with the intent to cause serious injury of an aggravated nature.

In light of the foregoing, the prosecution presented sufficient evidence for the trial court to find Dunn guilty of AWIGBH beyond a reasonable doubt, and thus Dunn's conviction must be affirmed. However, the evidence was further adequate to support Dunn's conviction of AWIGBH under an aiding and abetting theory. See *Robinson*, 475 Mich at 6 (explaining that vicarious liability may be imposed on accomplices); MCL 767.39 ("Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried, and on conviction shall be punished as if he had directly committed such offense.") The elements of aiding and abetting are as follows:

> (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement. [*Robinson*, 475 Mich at, 6 ( alteration in original; quotation marks and citation omitted).]

Dunn argues that he was merely present during the commission of the alleged offenses. However, the evidence presented at trial belies this argument. The proofs demonstrated that Dunn and the masked man purposely stopped by Jackson's residence. Both men separately approached Jackson in a nonthreatening manner, but as the conversation was concluding, Jackson was shot. Jackson's Draco pistol is subsequently portrayed in the masked man's hands while Dunn forcibly removes Jackson's FN Five-seveN pistol from his possession. The footage additionally depicts Dunn and the masked individual working in concert to disarm Jackson, and the masked individual instructing Dunn to reposition himself to allow a clearer shot of Jackson. Jackson also testified that he was shot again while on the ground. After acquiring Jackson's Rolex, Dunn and the masked individual jointly fled the premises. The foregoing evidence was sufficient to establish AWIGBH under an aiding and abetting theory.

## B. ARMED ROBBERY

Next, Dunn argues that there was insufficient evidence presented to support his armed robbery conviction. We disagree.

As previously stated by this Court, the elements of armed robbery are as follows:

(1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Muhammad*, 326 Mich App 40, 61; 931 NW2d 20 (2018) (quotation marks and citation omitted).]

Armed robbery may occur when "a criminal defendant makes an effort or undertakes an overt act with an intent to deprive another person of his property, but does not achieve the deprivation of property." *People v Williams*, 491 Mich 164, 174; 814 NW2d 270 (2012) (quotation marks omitted).

The footage portraying the underlying physical altercation between Dunn and Jackson plainly depicts Dunn as the person attempting to remove the FN Five-seveN pistol from Jackson's possession, as Jackson is visibly struggling and shouting. The masked individual is holding Jackson's Draco pistol and pointing the firearm at Jackson during the struggle, as one of the assailants is yelling, "Let it go." Further, after Jackson is disarmed of his firearms, the masked individual instructs Jackson to give over his Rolex while continuing to point the Draco pistol in Jackson's direction. Taken together, the evidence similarly supports Dunn's conviction of armed robbery under an aiding and abetting theory.

## C. FELON-IN-POSSESSION AND FELONY-FIREARM

Dunn was further convicted of multiple felonies related to his possession and use of a firearm. We conclude that the prosecution presented sufficient evidence to permit the trial court

to find Dunn guilty of the offenses of felon-in-possession and felony-firearm beyond a reasonable doubt.

To be convicted of felon-in-possession, the requisite statute "requires proof that the defendant was a convicted felon at the time he possessed a firearm." *People v Thigpen*, 349 Mich App 437, 454; 27 NW3d 647 (2023). In the present case, the parties stipulated to the fact that Dunn was a felon ineligible to carry firearms at the time of the offense, and that his rights to own a firearm had not been restored. Furthermore, the record indicates that Dunn possessed a firearm at the time of the incident despite his status as a felon. Jackson testified that Dunn shot him, implying that Dunn was in possession of a firearm. The pertinent footage further portrays Dunn with a firearm when he forcibly removed Jackson's FN Five-seveN pistol from his possession. Thus, the elements of felon-in-possession were established beyond a reasonable doubt.

To be convicted of felony-firearm, one must (1) possess a firearm and (2) possess the firearm during the commission or attempted commission of a felony. *People v Burgenmeyer*, 461 Mich 431, 436; 606 NW2d 645 (2000). As Dunn used a firearm in the commission of all three of the aforementioned felonies, three felony-firearm convictions are properly supported by these predicate felonies.[2] Sufficient evidence was therefore presented to affirm Dunn's three felony-firearm convictions.

## III. RIGHT TO A PUBLIC TRIAL

Dunn also contends that the removal of his mother from the courtroom violated his Sixth and Fourteenth Amendment rights. We conclude that Dunn is not entitled to relief under the applicable plain-error standard of review.

In criminal proceedings, issues must be raised at the time of trial to be preserved for appeal because "requiring a contemporaneous objection provides the trial court an opportunity to correct the error, which could thereby obviate the necessity of further legal proceedings and would be by far the best time to address a defendant's constitutional and nonconstitutional rights." *People v Carines*, 460 Mich 750, 764-765; 597 NW2d 130 (1999) (quotation marks and citation omitted). In the instant matter, Dunn admits that this issue is presented in the first instance on appeal. The issue is therefore not preserved.

For preserved issues, questions of law are to be reviewed de novo. *People v Perez*, 469 Mich 415, 418; 670 NW2d 655 (2003), citing *People v Gonzalez*, 468 Mich 636, 641; 664 NW2d 159 (2003). Unpreserved issues are instead reviewed for plain error. *Carines*, 460 Mich at 763. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*.

Once all three elements are proven, it is up to the discretion of the appellate court whether to reverse. *Id*. However, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness,

---

[2] See MCL 750.529; MCL 750.84(1)(a); MCL 750.224f (identifying these offenses as felonies).

integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; second alteration in original).

Ordinarily, "[t]he third requirement [of the plain-error test] . . .requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763. However, "the erroneous denial of a defendant's public-trial right is considered a structural error." *People v Davis*, 509 Mich 52, 67; 983 NW2d 325 (2022). And in *Davis*, the Michigan Supreme Court

> modified the *Carines* "plain error" test as applied to unpreserved structural errors. .. .. In addressing the third prong, also known as the prejudice prong, the *Davis* Court held that a forfeited structural error creates a formal presumption that this prong of the plain-error standard has been satisfied. The formal rebuttable presumption in cases of forfeited structural error shifts the burden to the prosecutor to demonstrate that the error did not seriously affect the fairness, integrity, or public reputation of the judicial proceeding. In such instances, the prosecutor must present specific facts that affirmatively demonstrate that, despite the error, the overall fairness, integrity, and reputation of the trial court proceedings were preserved. [*People v King*, 512 Mich 1, 10; 999 NW2d 670 (2023) (quotation marks, citations, and alterations omitted.]

"Given th[e] conceptual overlap between the third and fourth prongs of the plain-error standard and that a forfeited structural error automatically satisfies the third prong of the plain-error standard, a forfeited structural error is very likely to also satisfy the fourth prong of the plain-error test." *Davis*, 509 Mich at 75-76.

Under the federal and Michigan Constitutions, a criminal defendant is ensured the right to a public trial. US Const, Ams VI and XIV; Const 1963, art 1, § 20. The Sixth Amendment right to a public trial is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *People v GR*, 331 Mich App 58, 69; 951 NW2d 76 (2020). However, "the public-trial right is not unlimited, and circumstances may exist that warrant the closure of a courtroom during any stage of a criminal proceeding." *Davis*, 509 Mich at 65. In *Davis*, the Supreme Court determined that

> to justify a courtroom closure, there must be an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure. [*Id*. (quotation marks and citation omitted).]

In addition, this Court has resolved that a singular disruption was not enough to remove the defendant from the courtroom and that only a defendant who makes repeated disruptions and is continually warned by the court to modify their behavior to avoid removal could be removed from the courtroom. *People v Buie*, 298 Mich App 50, 59; 825 NW2d 361 (2012).

Previous Michigan jurisprudence has distinguished a partial closure of the court to a total closure. "A partial closure occurs where the public is only partially excluded, such as when family

members or the press are allowed to remain . . . ." *People v Kline*, 197 Mich App 165, 170 n 2; 494 NW2d 756 (1992). And because "the effect of a partial closure of trial does not reach the level of a total closure . . . only a substantial, rather than a compelling reason for the closure is required." *People v Russell*, 297 Mich App 707, 720; 825 NW2d 623 (2012). However, partial closure of the court to a criminal defendant's family members may warrant additional scrutiny. See *Kline*, 197 Mich App at 171 n 3. This Court posited in *Kline* that a criminal defendant's family members should not be removed from the court absent compelling reasons.[3] *Id*.

Upon initial review, the pertinent record is sparse at best. As the trial court announced its verdict, the following interaction transpired:

> *Unknown Speaker*: He needs to see this.
>
> He needs to see this.
>
> *Deputy*: I don't care.
>
> *The Court*: With respect to count four—
>
> *Unknown Speaker*: Okay.
>
> Well, he needs to see this.
>
> *Deputy*: Step out.
>
> *Unknown Speaker*: The Judge needs to see this.
>
> *Deputy*: You gonna go in the back.
>
> Come on.
>
> Let's go in the back.
>
> *Unknown Speaker*: The Judge needs to see this.
>
> *Deputy*: Step out.
>
> *Unknown Speaker*: He needs to see this.

---

[3] In refusing to "condone the removal of family members from the courtroom in the absence of compelling reasons," the *Kline* Court acknowledged that the case before it did not involve removal of family members. *Kline*, 197 Mich App at 171 n 3. Because *Kline*'s statement regarding the higher scrutiny that should be applied to removal of a defendant's family members was unnecessary to its decision, it was arguably nonbinding obiter dictum. To the extent *Kline*'s statement regarding the removal of family members was dictum, we may still rely on it as persuasive authority. *People v Higuera*, 244 Mich App 429, 437; 625 NW2d 444 (2001).

*Deputy*: Step out, before you go to jail.

*Unknown Speaker*: He needs to see this.

He knows who shot him.

He knows who shot him.

He knows who shot him.

After the cited exchange, the trial court continued its oration of the verdict, and the interruption was not addressed further. On appeal, Dunn contends that the speaker was his mother and that she was removed from the courtroom. The record, however, does not identify the unknown speaker, nor does it clearly establish that the speaker was removed by the deputy. Even less clear is whether the individual, if removed, sought to reenter the courtroom and, if so, how that situation was handled. On these facts, we conclude that Dunn has forfeited this claim under the plain-error rule.

The trial court arguably erred if it permitted the removal of Dunn's mother from the courtroom. Trial judges have a recognized "obligation to maintain orderly proceedings and proper decorum in the courtroom." *People v Jones*, 442 Mich 893; 499 NW2d 344 (1993). Furthermore, this Court has previously determined a defendant's disruptions in the courtroom were considered a justified reason to continue voir dire without his presence. *Buie*, 298 Mich App at 59. However, the *Buie* Court required that the interruptions be repetitive and that there be previous warnings from the trial court to rectify the disruptive behavior before subjecting the party to removal. *Id*. While Dunn's mother did make repeated statements interrupting the reading of the verdict, she received no prior warnings from the court before her removal. Additionally, there is no indication that the trial court considered reasonable alternatives to removal, or iterate findings supporting a partial closure of the courtroom, as required by *Davis*, 509 Mich at 66.

But this error, if it occurred, was not plain. In *Carines*, 460 Mich at 763, the Michigan Supreme Court clarified that by requiring that an error be plain, it meant the error was clear or obvious. "A clear or obvious error under the second prong is one that is not subject to reasonable dispute." *People v Allen*, 507 Mich 597, 614; 968 NW2d 532 (2021). The trial court's error in removing the individual without prior warning cannot be deemed clear or obvious. There is little instructive caselaw regarding the obligations of trial courts before removal of disruptive family members. We have accepted, for the sake of addressing this issue, that such a requirement exists as a result of the language in *Buie* regarding the proper procedure for the removal of a disruptive defendant, in conjunction with the higher scrutiny applied to the removal of family members noted in *Kline*. However, that is by no means a foregone conclusion, as the facts of *Kline* and *Buie* are distinguishable from the present case in that neither directly involved the removal of disruptive family members. Taking into consideration the rather ambiguous status of the law on the instant matter, we conclude any error that occurred was not plain or obvious. And as previously stated, the record is not clear as to the speaker's relationship to Dunn, whether the speaker was actually forced to leave the courtroom, and if so whether the speaker was permitted to reenter. Consequently, we must deem Dunn's claim of error to be forfeited and he is not entitled to relief on these grounds.

## IV. FALSE TESTIMONY

Lastly, Dunn argues that the use of Jackson's "false" testimony violated his state and federal rights to due process. We disagree.

Dunn did not preserve this issue by objecting to the prosecution's use of the challenged testimony at trial. *People v Clark*, 330 Mich App 392, 433; 948 NW2d 604 (2019). We therefore review this issue for plain error affecting Dunn's substantial rights. *Carines*, 460 Mich at 763.

It is well established that "a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction . . . ." *People v Smith*, 498 Mich 466, 475-476; 870 NW2d 299 (2015) (quotation marks and citation omitted). Under the United States and Michigan Constitutions, no person shall be deprived of life, liberty, or property without due process of law. US Const, Am XIV; Const 1963, art 1, § 17. Under Michigan law, "[i]t is inconsistent with due process when the prosecutor, although not having solicited false testimony from a state witness, allows it to stand uncorrected when it appears, even when the false testimony goes only to the credibility of the witness." *People v Wiese*, 425 Mich 448, 453-454; 389 NW2d 866 (1986). When "it should be obvious to the Government that the witness's answer, although made in good faith, is untrue, the Government's obligation to correct that statement is as compelling as it is in a situation where the Government knows that the witness is intentionally committing perjury." *People v Brown*, 506 Mich 440, 450 n 5; 958 NW2d 60 (2020) (quotation marks and citation omitted). In cases of potentially inconsistent testimony, the witness's preliminary examination testimony may be used to permit the finder of fact to verify the witness's credibility. *People v Donald*, 103 Mich App 613, 617-618; 303 NW2d 247 (1981).[4]

However, this Court has determined that a conviction "offends a defendant's due process protections guaranteed under the Fourteenth Amendment" when it is "obtained through the *knowing* use of perjured testimony." *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009) (emphasis added; quotation marks and citation omitted). See also *People v Thornton*, 80 Mich App 746, 750; 265 NW2d 35 (1978) ("Based on existing authorities, we are convinced that [error] occurs when . . .the prosecution *knowingly* presents false testimony.") (Emphasis added). Additionally, this Court has previously determined that the focus of this due-process inquiry is "the misconduct's effect on the trial," and "not the blameworthiness of the prosecutor . . . ." *Aceval*, 282 Mich App at 390 (quotation marks and citation omitted).

We conclude that Dunn has also forfeited this claim under the plain-error rule. The prosecution did not err by presenting Jackson's potentially inconsistent testimony. It is true that Jackson's statements before and during trial included several questionable assertions. Namely, Jackson initially claimed to police that Dunn and the other individual withdrew black firearms and fired at him. Despite this claim, Jackson later testified at trial that he did not see firearms on either of these persons before being shot. Additionally, Jackson claimed during the preliminary examination that he identified the other individual at the time of the attack through various physical

---

[4] Although preliminary examination testimony may be used in assessing the credibility of a witness, testimony from preliminary examinations may not be used substantively. *Donald*, 103 Mich App at 617-618.

features, but later testified at trial that he did not know the other individual "at the time." He then backtracked this statement, clarifying that the other individual "looked familiar" and that Jackson "knew of him." When asked how he could recognize the other individual if that person's face was covered with a mask, Jackson referenced various distinctive features, such as the individual's complexion, tattoos, "darkness," and voice. Further, while Jackson testified at trial that he did not see the firearm used to shoot him, he additionally stated, "I seen and heard, a, a bow, yeah, straight, straight ahead." These statements are somewhat inconsistent as it remains unclear how Dunn could "see" a sound and the direction of gunshots without actually seeing the firearm itself.

While the cited testimony may be inconsistent, the pertinent inquiry is whether the prosecution knowingly utilized false testimony. *Smith*, 498 Mich at 475-476. "The defendant has the burden of demonstrating that a witness's testimony was, in fact, false." *People v Thurmond*, 348 Mich App 715, 736; 20 NW3d 311 (2023). "Although an inconsistent prior statement may be a mechanism to impeach a witness's credibility at trial, it is not definitive evidence that the trial testimony is false." *Id*. at 737 (quotation marks and citation omitted). In the present case, while Jackson's statements at his preliminary examination were certainly inconsistent with his later trial testimony, there is no evidence in the record to support that those statements were patently false. As Dunn has not met his burden to demonstrate that Jackson's testimony was false, the use of this testimony does not violate the rule in *Smith*. Accordingly, the prosecution did not violate Dunn's due-process rights by presenting Jackson's inconsistent testimony.

Affirmed.

/s/ Daniel S. Korobkin
/s/ Adrienne N. Young
/s/ Mariam S. Bazzi

-11-